MINUSE and others *against* COX and others.

Where land was conveyed to the defendant, in trust to sell the same
"at auction, or otherwise, in whole or in parcels, on giving three
weeks notice thereof:" *Held*, that the direction, as to notice, applied
only to a sale by public auction, and that the trustee having a dis-
cretion, a private sale by him, without any notice, was valid.

Where a trustee is directed to sell, on giving public notice, &c.,
a sale by him without such notice, will be valid, so as to confer
a good title on the purchaser; but the trustee will be responsible
for any deficiency in the price, below the real value of the land
sold by him.

Where there is no unreasonable delay by a trustee, in applying the
trust monies, according to the directions of the trust deed, and he
does not apply the monies to his own use, he will not be chargeable
with interest.

Objections to the admissibility of evidence before a master, not made
the ground of exception on the report being filed, will be considered
as waived, and cannot be raised at the final hearing.

Affidavits taken ex parte, after a cause has been set down for a final
hearing, are inadmissible.

To give effect to a devise, the testator must not only be actually seised
of the land devised at the time of making his will, but must continue
so seised to the time of his death. A conveyance, therefore, by the
testator, of the land devised, is so far a revocation of his will.

Although the plaintiff was entitled to file his bill for an account and
distribution; yet where the charges of fraud, collusion and miscon-
duct against the defendants, which formed the main ground of the
suit, were proved to be false, unjust and vexatious, it was dismissed
with costs, as to the defendants not liable to account, and the de-
fendant who was accountable as trustee, was allowed all his taxable
costs and extra charges and expenses out of the fund, before distri-
bution.

THE bill, filed *November* 28, 1818, stated, that the plain-
tiff *Catharine*, who married the plaintiff *John Minuse*, was
the only daughter of *Alexander Fink*, deceased. Her
father, by his will, dated *October* 18, 1816, gave to his

*May* 30th and
*July* 31st.

56

daughter and his three sons, (defendants,) equally, all his personal estate, and to his daughter, a house and lot on the corner of *Grand* and *Second* streets, in the city of *New-York*, and another lot adjoining; and devised the residue of his real estate to his executors, in *trust*, to sell the same, and divide the same equally among his children, and made the defendants, *Jamieson Cox* and *David Grim*, his executors. On the 30th of *October*, 1816, *A. F.*, the testator, conveyed to the defendant, *Cox*, two houses and lots, No. 37, and 39, in *Chatham* street, a house and lot in *William* street, and three lots of land at the corner of *Grand* and *Second* streets, and a mortgage of *C.* and *T. Coles* dated *April* 26, 1816, for 2,000 dollars, and all the bonds, notes, debts, and personal estate of *A. F.*, in trust, to take possession and receive the rents, and to pay thereout sufficient for the comfortable maintenance of *A. F.*, and to pay his debts, excepting those due to his children; and in case the rents and personal estate should not be sufficient, then in trust, after his death, to sell at auction or otherwise, in whole, or in parcels, on three weeks notice, the real estate, or so much thereof as may be adviseable and necessary, and out of the proceeds, to pay the costs and expenses, and the debts due by *A. F.*, and out of the residue to pay the debts due to his children; and the residue to divide among his children, according to his will. *A. F.* died *December* 11, 1816; and the deed to *Cox* was recorded *January* 10, 1817. The bill further stated, that the plaintiff *Catharine*, some months before his death, supported the testator, who was indebted to her, at his death, 850 dollars for moneys advanced to him and for his use; that the plaintiff *J. M.*, executed an assignment to the plaintiff *J. M.*, jun., reciting the will of *A. F.*, and that he was indebted to *J. M.*, jun., in 500 dollars, and assigned to him all his interest under the will, in *trust*, that *J. M.*, jun., should carry into effect the intentions of the will, as respected the plaintiff, *Catharine*. That *J. M.* was made a plaintiff for the sake of form only, having no interest in the suit. That the defendant *Cox*, under the deed of *trust*

1821.

MINUSE
v.
Cox.

to him, took possession of the property, and after the death of *A. F.* assumed solely the trust of executor. That *Cox*, combining with the other defendants to defraud the plaintiff *Catharine*, on the 1st of *May*, 1817, leased the lot in *William* street, to the defendant *Sparks*, for an inadequate rent of 400 dollars, when 500 dollars rent was offered and refused. That the defendant *Cox*, in collusion with the defendant *S.*, (a son in law of *A. F.*) and the defendant *A. F.* jun., in *March*, 1807, agreed to sell the lot in *William* street, for 6,500 dollars, when 8,000 dollars had been offered for it, and that without any notice of the sale, as required by the deed of trust. That the defendant *Cox*, collusively and corruptly agreed to pay certain pretended debts of the defendants *Philip Fink* and *John L. Fink*, who were to connive at the said sale, and which debts were accordingly paid.

The bill further charged, that the defendant *Cox*, in *September*, 1818, pretended to give public notice of sale of the two lots in *Chatham* street, and entered into a corrupt agreement with the defendant *R. Brown*, to allow him to become the purchaser; and the lots were accordingly struck off to him, at an inadequate price, and corruptly and fraudulently sold, on a tempestuous day, for 11,350 dollars, though some person interested under the will requested a postponement of the sale. That the lots were worth 16,000 dollars, and the defendant *C.* knew that other persons had offered that sum. That the defendant *B.* is the son in law of the defendant *C.* That the defendants *P. F.* and *A. F.* jun., corruptly agreed with the defendant *C.*, to allow the defendant *B.* to become the purchaser; and *C.*, in pursuance of such agreement, paid them their debts against the estate of the testator. That the defendants *C.* or *G.*, or one of them, possessed themselves of the personal estate of the testator, and applied the same to their own use, and refused to account. That in *December*, 1818, the defendant *C.* furnished an account of monies received

and paid by him, which was false. The bill *prayed*, that the sales to *S.* and *B.* might be declared fraudulent and void, and the deeds be decreed to be delivered up and cancelled, and that the defendants be decreed to answer for the fair value of the lots so sold, or that they be re-sold, &c. That the plaintiffs *Catharine* and *J. M.* jun., may be quieted in the premises devised to the plaintiff *Catharine*, and that the defendant *C.* may be decreed to come to a fair account with the plaintiffs, touching the premises so conveyed to him, and to pay the plaintiffs what may be found due ; and that the residue of the estate not specifically devised, be sold and distributed, according to the trusts ; and for general relief.

The defendants put in separate answers ; but it is not necessary to state them particularly. The defendant, *Cox,* in his answer, admitted the will of *A. F.* and the *trust deed* as set forth in the bill ; and that *A. F.* was seized of the real estate described in the deed. He admitted that he took possession of the property mentioned in the trust deed, and received the rents and profits, of which he gave a full account, in a schedule. He admitted, that he was the sole acting executor ; the defendant *G.* never having qualified or intermeddled with the estate. He answered every part of the bill, and fully denied every charge of fraud, collusion, or improper conduct. He denied that he had ever applied any part of the estate, or the proceeds thereof, to his own use, or had been in any manner benefitted thereby. He stated that he kept the monies of the estate distinct from his own, and deposited the balance due from him, on the first of *December* last, in the *Mechanics Bank*, where it still remained. The answer of the defendants *S.* and *B.* confirmed the statements made by the defendant *C.* as to the sale and disposition of the lots.

Witnesses were examined; and an order of reference to a Master was made, the 29th of *June*, 1820. The master's report, dated *October* 11th, 1820, was very full and special.

Exceptions having been filed to the report, they were re-ferred, by an order of the 17th of *November*, 1820, to the master to report thereon, and leave was given to either party to produce further proof before the master. The master made a report on the 6th of *March*, 1821. All the material facts admitted, or proved, or reported by the master, are sufficiently stated in the opinion of the Court.

*May* 30*th.* The cause was this day heard on the plead-ings, proofs, &c.

*A. Burr*, for the plaintiffs.

*Slosson*, contra.

THE CHANCELLOR. 1. The allegation of fraud or breach of trust in the defendant *Cox*, in the sale at auction of the houses and lots, No. 37 and 39 in *Chatham* street, is without a shadow of foundation. It was a fair and regular sale on due public notice, at the coffee house in the city of *New-York*, and for a fair and full price, and in the presence of a re-spectable number of bidders. This is the opinion of the master, and this is my opinion, after a careful review of all the proofs. The pretence of its being a stormy day is destitute of any real solidity, when it is well known, that in the midst of a crowded and busy city, and in the very heart of its commerce, such a circumstance, unless in a very extreme case, never interrupts or disturbs the ordina-ry course of business. The reasoning and opinion of the master in his first report, of the 11th of *October*, 1820, seems to me to be conclusive. It is further to be observ-ed, that the plaintiff *John Minuse*, the elder, and the two sons of the testator, *Alexander* and *John L. Fink*, were present at the sale, and made no objection, nor did they request any postponement. The only evidence of such a re-quest is the testimony of *Peter Dewilt*, who says, that Mrs. *Minuse* made such a request on the morning of the auction

**1821.**

**MINUSE
v.
COX.**

Where a trustee is directed to sell the trust property, " at public auction or otherwise, in whole or in parcels, on giving three weeks notice," &c. the direction as to notice applies to a sale at public auction; and the trustee having a discretion, a private sale by him, is valid.

sale to a person whom she saw, but whom he did not know to be the defendant *Cox.* This request being positively denied in the answer, that testimony is of no avail.

2. Nor is the charge of fraud or breach of trust, in respect to the renting, and in respect to the sale of the house and lot, No. 238 *William* street, better supported. It was prudently rented and prudently sold, and the whole charge going to impeach the motives and integrity of the trustee was equally untrue and unjust. The sale was for a full and fair price, and that decidedly appears from the weight of the testimony. Nor was there any irregularity or breach of trust in selling at private sale, without public notice. By the testator's will, of the date of the 18th of *October.* 1816, the testator devised the residue of his estate to his executors in fee, and in trust, " to sell and dispose of the same by public auction or private contract, as to them or him should seem expedient." The will left the mode and manner and time of sale entirely in the sound discretion of the executors, and gave no direction as to notice ; and it is to be observed, that it is under the will that the plaintiff *Catharine* was entitled to claim, and did actually receive to herself, exclusively, the two lots on the corner of *Grand* and *Second* streets. The trust deed which followed after the making of the will, declared, that the testator was desirous that the residue of his estate " might be sold and disposed of, after his decease, among his children and next of kin, *according to the directions of his last will.*" It then conveys the whole real and personal estate to the defendant *Cox,* in fee, and in trust, to sell " by public auction, *or otherwise,* and together or by parcels, at his and their discretion, upon giving three weeks notice thereof, in one or more of the daily public newspapers to be published in the city of *New-York.*" The trustee, under this deed, as well as under the will, had a discretion to sell at public or private sale, and the direction to give *three weeks public notice in the daily*

*papers*, evidently alluded to sales at auction, and not private sales. The direction was to give three weeks notice *thereof*, that is, of the auction. To give three weeks notice of a private sale would be absurd ; and it would be equally so to suppose the testator, when he gave to his trustee a discretion to sell at auction *or otherwise*, that he meant to debar him from accepting of an advantageous offer, because there had not been three weeks notice of the time of accepting it These words must be construed according to the reason of the thing, and the usages of business applicable to the case ; and there can be no possible doubt of the intention of the deed, that the notice should be applied to the auction sales, and not to any other.

But if that notice did apply to all and every sale, public and private, I should concur in opinion with the master, that the sale without the notice would be valid, and confer a good title on the purchaser ; and that the only consequence would be, that the trustee might be responsible for any deficiency in the price, for which it sold, below the real value of the land. But he reports that in this case, the house and lot sold for a full and fair price, and probably for as much or more than it would have fetched at auction. It appears further in proof that the private sale was at the request of the plaintiff *John Minuse*, the elder, and of the defendant *Alexander Fink*.

*But if the direction as to notice, did apply to both a public and a private sale, a sale, without notice, would be valid, so as to confer a good title, on the purchaser; but the trustee would be responsible for any deficiency of the price below the real value of the land.*

3. Another charge of fraud and breach of trust in the defendant *Cox*, is that he paid the debts of *Alexander* and *Philip Fink*, against the estate of the testator.

Those debts had been liquidated and acknowledged by the testator himself, under his own hand. The acknowledgment was proved by the plaintiffs, the elder and the younger *Minuse* ; and the account of *Alexander Fink*, in particular, the testator acknowledged and signed at the request of the elder *Minuse*. One of the witnesses heard both *John Minuse* and his wife declare, on the very day the testator settled

1821.

MINUSE
v.
Cox.

these accounts with his two sons, that they were *satisfied*, and glad it was settled. The weight of proof was also very decidedly in favour of the competency of the testator, not only to make a will, (in which the plaintiffs acquiesce, for the plaintiff *Catharine* takes under it a specific devise,) but to decide on, admit and acknowledge the demands of his two sons. After such settlements, and with such approbation, was it for the defendant *Cox* to contest them, and throw a brand of discord into the heart of that family? There is no colour for the accusation of a breach of trust on this ground.

4. Another charge is, that the defendant *Cox* paid a debt of *John W. Tuthill* against the estate; but the master reports the proof, and it was amply sufficient to support the charge, and justify the payment.

*Where there is no unreasonable delay by a trustee in applying the trust monies according to the directions of the trust deed, and he does not apply it to his own use, he is not chargeable with interest.*

5. The counsel for the plaintiffs have objected to the master's report, because he had not charged the defendant *Cox* with interest on the trust monies which had from time to time come to his hands. But the master observed that there was no unreasonable delay of the defendant *C.* in the payment of debts, nor any evidence that any of the monies had been applied to his use. It further appears, that the testator died in *December*, 1816, and the trust deed is dated the 20th of *October*, 1816; and by the 1st of *December*, 1817, the trustee had paid towards debts, and necessary disbursements, 16,568 dollars and 35 cents, and had deposited the balance in bank, on the 1st of *December*, 1817. There was no proof of any culpable negligence in the case; and the master would have done injustice to the defendant *C.*, if he had charged him with interest. This Court is as solicitous to protect a faithful, as it is to punish a faithless trustee.

6. The counsel for the plaintiffs have made an objection to the admission by the master of parol proof before him, as not within the order of reference of the 29th of *June*, 1820. But as far as parol proof was admitted

under that order, it did not form a ground of objection to the report of the 11th of *October*, 1820, made under that order, nor was it one of the five objections taken. It was therefore waived, and cannot be raised at the final hearing. This is a clear and decisive answer to the objection; and as far as parol proof was admitted by the master, under the second order of reference of the 17th of *November*, 1820, it is sufficient to observe, that the order expressly declared, that " either party might give further proof before him, as to the points so excepted to." And it is worthy of notice, on this point, that the order of the 17th of *November* confirmed the report in all points not excepted to, and the exception now referred to was not taken until the coming in of the second report in the following *March*.

There was another objection to the second report, that the master had not stated accurately one or two facts in relation to the testimony, but the circumstances referred to were so immaterial, as to the merits of the case, whether they were correct or not, that I have not thought it worth while to take further notice of them.

7. The counsel for the plaintiff offered at the hearing, the affidavits of *John Puntzius*, and *John Minuse*, the plaintiff, taken on the 26th of *May*, 1821, *ex parte*, and after the cause was set down for final hearing, and upwards of two months after the coming in of the second report, and the exception taken thereto. This was an irregularity, and an abuse of the privilege of taking testimony, too glaring to suffer me to pause for a moment, in declaring them to be irregular and inadmissible.

8. The master has mentioned in his first report, that it was shown to his satisfaction, that the plaintiff, *John Minuse*, had a demand against the testator's estate for 752 dollars and 82 cents, including the boarding, lodging and necessaries furnished the testator by *Minuse* and his wife. In respect to this debt, it is to be observed, that the bill does not embrace it. It is declared that the plaintiff, *John*

*Minuse*, the elder, is made a party for form only, and that he has no interest in the suit; and the bill states, that the elder *Minuse* had assigned to the younger *Minuse*, all his right and interest *under the will* of the said testator. The debt, therefore, due to the elder *Minuse*, was not included in the deed of assignment, for it was not a right or interest derived under the will or deed of trust of the testator. In respect to that debt, the elder *Minuse* stands as a creditor, and disclaims to sue in that character in this suit. The answer says, he has sued at law for his demand, and that the suit was then at issue, and we have no concern with that demand in this suit.

To give effect to a devise, the testator must continue to be seised of the land devised to the time of his death.

9. The whole ground of the bill has failed; and the highly inflamed and most injurious charges of fraud, corruption, and abuse of trust, were without the least shadow of foundation in truth or justice. There is no proof that even the conveyance of the two lots given to the plaintiff *Catharine*, by the will of her father, had ever been demanded of the trustee; and as these lots, as well as the rest of the estate, had been conveyed to the defendant by deed, executed subsequent to the will, it was so far a revocation of the devise. It was a subsequent alteration of the estate by the act of the testator himself, and the testator was no longer seised after the conveyance in trust; and to give effect to a devise, the devisor must not only be actually seised at the time he makes his will, but he must continue to be seised of the land devised at the time of his death. (*Bro. Abr. tit. Devise*, pl. 15. 1 *Rol. Abr.* 615. and pl. 6, and 2. pl. 1.) The title of the plaintiff *C.* to these two lots rested on the trust deed, and not on the will; and the defendant *C.* had a right to retain the same a reasonable time, to see if the sale and proceeds of them might not be wanting to satisfy debts. There was no default on the part of the defendant *C.*, in not re-conveying these lots to the plaintiff *C.*, at the commencement of this suit, that would render

him deserving of blame. There should at least have been a formal demand upon him, for the release of those specific lots, to put him in the wrong; and it appears now to be admitted by the counsel for the plaintiff, that at the time of the first reference in the cause, in *June*, 1820, to have an account of the estate taken and stated, the defendant *C.* agreed and had since released to the plaintiff *C.*, the two lots devised to her by the will. The two references to the master, and all the litigation accompanying it, were therefore confined to the charge of fraud and abuse, which have been already considered. If the · bill had simply been to call for an account and distribution, there would have been no real ground to complain. What then remains for the defendant *Cox* to do? It is to sell at auction the remaining lot unsold, and to retain out of the proceeds of that lot, and of the surplus monies in hand, sufficient to meet the demand at law of the plaintiff *John Minuse*, and to distribute the residue, after all the charges of this suit are deducted, among all the children of the testator in rateable proportions. And considering the great vexation, and injustice and falsehood, of the charges forming the main ground of this suit, I shall direct: 1. That the bill as to all the defendants, except the defendant *Cox*, be dismissed, with costs to be paid by the plaintiffs. 2. That the defendant *Cox* recover his taxable costs of this suit, and charge the same upon the surplus fund coming to the plaintiffs, or to one of them, and that he charge all his other *extra* expenses and charges of this suit, that were just and necessary, on the fund at large, before any division and distribution thereof. 3. That the lot remaining unsold, be sold in a reasonable time, by the defendant *Cox*, at auction, on giving three weeks notice, and that out of the proceeds thereof, and of the monies in hand, he retain sufficient to meet any demand at law of the plaintiff *John Minuse*, against the estate of the testator, and any other just demand now existing; and that he distribute the residue, equally and rateably, among

<div style="text-align: right">

1821.

MINUSE
v.
COX.

the children of the testator, after having previously deducted his *extra* expenses and charges justly incurred in this suit, from the fund at large, and his taxable costs of this suit out of the share or proportion of such surplus coming to the plaintiff *Catharine*, or to such of the plaintiffs as may lawfully represent her. And the plaintiffs are to be at liberty, at any time hereafter, to apply to this Court, by petition or due notice, on the foot of this decree, to compel a performance of the same on the part of the defendant *Cox*, as to such sale and distribution, according to the directions aforesaid.

Decree accordingly.