Tucker, P.
The testator in this case gave to his wife one third part of the rents and profits of his Fin-castle property, for her life, leaving the other two thirds *616 during her life undisposed of, except that he constituted that property the fund for paying his debts. He then says, “ To the children of my son and daughter Conally and Nancy Finlay, I give one half of my personal property in Washington, also two fifth parts of the net proceeds of my estate in Fincastle aforesaid, which is to be sold at my beloved wife’s death, at the discretion of my exe'cutors.” He then gives two other fifths to Mitchell and wife, and the remaining fifth to Allen and wife, whose interest is claimed by the appellee.
It seems to have been assumed by the counsel for the appellee, that these devises of the proceeds of the Fincastle estate were to be considered as legacies; but it was very properly admitted that as legacies, they came within the description of specific legacies. And if they are legacies at all, in the strict sense of the term, they are strictly specific, and are not of that class of legacies of money or quantity, which are said to be only in the nature of specific legacies, and which, if the fund be called in or fail, will be paid out of the general assets. 1 Roper on Legacies 169. For here it is clear, the testator had no design that his general asset's should ever be charged with these legacies. The fund out of which they were to come was a land fund, and the personalty could never be reached by them. 6 Munf. 163. Moreover, it was not a bequest of a certain sum (as of 500 dollars) chargeable upon the land, which, according to the case of Fowler v. Willoughby, 2 Sim. & Stuart 354. might be charged on the general assets, if the land failed, but it was a devise of an uncertain interest, which would be more or less, according to the price for which the land might sell; the amount of which did not admit of being ascertained except by sale. And if the testator had in his lifetime given the land to his three sons, or devised it to them by a subsequent will, it cannot be pretended that the legatees under this will could have resorted to the personal estate for payment.
*617 Now in this point of view it is clear that intention uias nothing to do with the question of ademption. The question is merely whether there be an extinction of the subject. “ The word ademption,” says a standard writer, “ when applied to specific legacies of stock or money, or securities for money, must be considered as synonymous with extinction. For if stock &c. so bequeathed be sold or disposed of, there is a complete extinction of the subject, and nothing remains to which the words of the will can apply. For if the proceeds from such sale or disposition were to be substituted, and permitted to pass, the effect would be to convert a specific into a general legacy. 3 Brown’s G. C. 432. The intention of the testator is immaterial in the ademption of specific legacies, because the subject being extinct at the death of the testator, there is nothing upon which the will can operate.” These positions seem to me to be sound and incontrovertible. If then this had been an actual bequest of stock, and subsequently to the execution of the will the stock had been sold, though the proceeds of the stock were brought into the personal fund, and could be ascertained, yet the legatee could not have followed them into that fund, and demanded that they should be paid to him; since that would be, in the language of the lord chancellor in the above cited case, to convert a specific into a general legacy. We shall presently see that the case at bar is much stronger than the case supposed.
To come to a just understanding of this case, however, we must consider it more closely. - This is the ease of a devise; and it is a devise of real estate. This is sufficiently obvious from the consideration, that to make the will effectual as to this clause, it must be proved as a will of real estate. No one can suppose that a devise that lands shall be sold and the proceeds paid to A. B. would be valid to authorize the sale of the lands, unless the will be executed according to the sta *618 tute. It was clearly, then, a will of real estate. And if not a devise to the executors in so many words, yet in equity the descent is considered as broken by a de~ vise that the land shall be sold for payment of debts or legacies. 7 Ves. 319. 8 Ves. 26. Nay more, — from the earliest time, “ albeit the executors, in case of a devise that they shall sell, have no estate or interest in the land, but only a bare an'd naked power, yet their feoffment amounteth to an alienation, to vest the land in the feoffee; and the feoffee shall be in by the devisor.” 1 Tho. Co. Lit. 459, [397,] So, completely, indeed, is it a devise of the land to the three beneficiaries, that if it had not been sold, Finlay, Mitchell and Allen might now, by their concurrent act, demand a conveyance of the land itself, And arrest the sale; for a right to the whole proceeds of the estate is a right to the estate itself. This matter was very fully discussed in the case of The Commonwealth v. Martin’s ex’ors &c. 5 Munf. 156. in which the court indeed was divided, but upon the ground that the legatees, being aliens and incapable to take land, had not a right of election to take the land itself, but were confined to take the interest as money. But it was most strongly contended by judges Cabell and Roane (and judge Broohe concurred with them, though he did not sit) that the effect of a devise that land should be sold and the money paid over to A. and B. was to vest in A. and B. an equitable interest in the land itself, and that this was so even in the case of aliens. I do not understand judge Coalter or judge Fleming as denying the general proposition. They only denied its application to aliens, and others disabled to hold lands; on the ground that this maxim of equity cannot be extended to them, against the principles of public policy, or merely for their own destruction. I will add a reference to some of the cases cited. 9 Mod. 167. 3 P. Wms. 46. Doug. 770. In this last case lord Mansfield says, “ A devisee of the surplus arising from the sale of *619 lands has an equitable interest in the lands themselves, it being in his option to pay the debts and legacies and keep the lands.” And it is the same thing, whether the whole proceeds of sale are devised to one, or to be divided among several; although a bequest of a sped-lie sum of £ 100. to be paid out of the proceeds of sale, is a money legacy, with a collateral charge only for payment. This equitable interest may be enforced by the legatee against the person holding the legal estate, whether heir or executor, and a conveyance will be decreed in his favour; so that in this case the legatees might, at this day, if the land were unsold, file their bill against the heirs for a conveyance of the title.
The devise, then, being of realty, that is, of an equitable interest in land, was revoked by alienation. This principle is too plain to require support. If I devise lands today, and sell them tomorrow, it is a revocation; and it will make no diiibrence, although I should buy them back again the next day. See 7 T. R. 416. 5 Johns. Ch. Rep. 441. 1 Wms. Saund. 277. n. 4. 2 Munf. 209. and the cases cited in that case; 7 Johns. Ch. Rep. 258, 270. 19 Ves. 170, 178. According to this principle, if King, after having sold the lands, had taken them back again, the will would not have operated upon them. And if it would not have operated upon them, by what course of reasoning can it be made to operate upon the bonds for which (hey were sold ?
So much for the case, upon matter of principle. But, as lord Eldon said in Bailey v. Ekins, 7 Ves. 323. “ what is infinitely more satisfactory to me,” upon authority there was a clear revocation of this devise. In the case of Arnald v. Arnald, 1 Bro. Ch. Ca. 401. E. M. by her will ordered her estate to be sold, and the produce to be divided between several persons. After making the will, she sold the estate for .£2500. part of which was left on mortgage, and the remainder was invested in the 3 per cents; so that the price was easily followed *620 into the personalty. It was contended (precisely as has been contended here) that this was not a revocation; that the testatrix had only done the act herself, which, at the time of making the will, she intended should be done by the trustees; and although the legatees could not take it in the form in which the testatrix then intended, they might have the substance. This is the very argument of our counsel; yet the court said, “ There is an absolute disposition made by the will; and before that can take effect, another absolute disposition, inconsistent with it, is made by the testatrix herself.” His lordship (Thurlow) therefore decreed that the will was revoked; and the residuary legatee of the personal estate took the produce or proceeds of sale of the lands, as part of the personalty. So in Newbold v. Roadknight, 1 Russell & Mylne 677. there was a devise to trustees to sell, and out of the proceeds to pay T. N. ¿63000.; and the residue to be divided among several. Afterwards the testator sold the lands, and conveyed them to the purchaser. The master of the rolls decided, that all the legacies were adeemed, — even the particular legacy of £ 3000. He said, “ The gift to one of a sum of money, part of the produce of real estate directed to be sold, followed by a gift'of the residue of the purchase money to others, is substantially a gift of the estate, and not a gift of legacies with a collateral charge upon the estate;” and that, he said, distinguished this case from Fowler v. Willoughby.
These cases seem to me decisive of the present question. See Powell on Devises 376. A distinction, however, has been attempted between the last case and the case at bar, which, if well founded, applies also to Arnold v. Arnold. It is, that there the land was devised to trustees, — here there is no such devise. But I have already shewn that there is a devise of the equitable title, and the heir himself is trustee for the legatees. The distinction therefore weighs nothing.
*621 But It is said that the testator, having in this ca.se direeled a sale out and out, the character of personalty is imperatively fixed upon the land, and the legatees would have taken it as personalty. This principle is not denied, but its application is. It is a principle that is called into action in all cases, as between the legatees themselves, when ail will not assent to take land instead of money, and between the husband or other personal representative of a legatee, and the heir. In those cases the estate is considered as of the character imperatively fixed by the will. The rule rests upon the principie, that equity considers that as done by the executor or trustee, which ought to have been done, and that the rights of parties shall not be affected by the trustee’s delay. If, in case of such devise to a feme covert, the executor had sold before the death of the devisee or legatee, her husband would have had a right to the money. The land therefore is considered as money, and will go to him, though unsold; for it ought to have been sold. And so between the personal representative and the heir. But as it respects the devise itself, if'is well understood “that the produce of an estate directed by the devisor to be sold can never be strictly a part of Ais general personal estate. If he even direct it to be paid to his executors, and applied as part of his personal estate, still the executors take it but as devisees. Every person taking an interest in land directed to be sold, is in truth a. devisee and not a legatee.” Smith v. Claxton, 4 Mad. Ch. Rep. american edi. 256, 260. Hence it is clear that though the legatee takes the gift as money, the estate retains the quality of land in the testator’s hands. And thus we are brought back to the position that the devise is in this case a devise of land.
I have already said, intention has nothing to do with this question. Seo Powell on Devises 376. But even if "it had, it is impossible to say how the testator’s mind may have changed in five years, or what may have been *622 the influence of the change effected by his wife’s death. she lived, two thirds of the estate would during her life have gone to the heirs general. By her death, o •/ that two thirds would be taken from them, and would ^ave gone to increase the interest of these legatees, if the will had not been changed by the sale. Who can say that this fact, with the possibility of relenting as to his sons, to whom he had given nothing, did not produce the change ? The effect, now, is to put all on an equality.
It only remains to observe that as the will, being a will of realty, speaks as of the day of its date, it cannot be interpreted to embrace the bonds which did not exist till five years afterwards. Had there been a republication after the sale, they would doubtless have passed.
I am of opinion that the decree be reversed, and the bill dismissed with costs.
The other .judges concurred. Decree reversed and bill dismissed.