# Case No. 3,274.

## COULSON v. HOLMES et al.

[5 Sawy. 279; 6 Reporter, 674; 11 Chi. Leg. News, 49; 24 Int. Rev. Rec. 358; 7 Cent. Law J. 446.][1]

Circuit Court, D. Oregon. October 14, 1878.

REVOCATION OF WILL — ALTERATION OF ESTATE— JUDGMENT OF PROBATE OF WILL.

1. A conveyance of property previously devised works a revocation of such devise; and this, where the conveyance is to the devisee, accompanied by a trust in favor of the devisor.

2. A will does not take effect upon an after-acquired estate; and any alteration of the estate of the testator in the premises after the devise works a revocation of the will.
[Cited in Hardenberg v. Ray, 33 Fed. 818.]

3. A court may determine that certain premises are not within the operation of a certain will, without questioning the validity of such will, or the legality of the judgment admitting it to probate.

Suit in equity [by Teresa E. Coulson against Byron Z. Holmes, Alice J. Strowbridge, and Mary A. Hueston] to establish and declare a trust in real property.

[Heard on exceptions to the answer of the defendant Holmes.]

John H. Reed and Sidney Dell, for complainant.

Eugene A. Cronan and John Waldo, for defendants.

DEADY, District Judge. This suit is brought to establish an alleged trust in certain real property situate in Portland, in favor of the complainant, Teresa E. Coulson, nee Holmes, and her two sisters, the defendants Alice J. Strowbridge and Mary A. Hueston, who, having refused to join in the suit as complainants, are therefore made parties defendant; and for an account of the rents and profits as against the defendant Byron Z. Holmes; and also to procure an equal partition of the premises between the plaintiff and said defendants, by a sale thereof and a division of the proceeds.

The bill alleges that at and long before March 29, 1870, Thomas J. Holmes, the brother of the plaintiff and the defendants, was the owner of an undivided half of the premises in question, and the defendant, Byron Z., the owner of the other such half; that at the date aforesaid, said Thomas J. executed a conveyance of his interest in the property to the plaintiff for the expressed consideration of one dollar, but in fact, without any consideration, and in trust for himself; that at and before the date of such conveyance the said Thomas J. was threatened with an action for seduction, and being of weak mind, and greatly under the influence of the plaintiff, he was induced by the latter to make the same so as to prevent his property from being taken to satisfy any judgment for damages which might be obtained against him in such action; that the plaintiff accepted said conveyance with a full knowledge and understanding of the purpose with which it was made, but afterwards and upon various pretenses deferred the reconveyance of said property in pursuance of said trust, with the hope of defrauding the lawful heirs of said Thomas J. of their just rights in the premises, the said plaintiff being well aware that said Thomas J. was not likely to live long; that said Thomas J. died on December 27, 1875, leaving as his only heirs at law the plaintiff and defendants; that since the date of said death there has been received and appropriated by the plaintiff from the rents and profits of said premises the sum of six hundred dollars per month; that said premises are of the value of thirty thousand dollars, and consist of lot 2 in block 38, and the southwest quarter of block 16, together with a strip eighty feet long by five and one half feet wide off the west end of lots 3 and 4 of said block, upon which there are valuable buildings; that an equal partition of the same among the parties aforesaid cannot be made in kind without irreparable injury thereto; and that since the death of the said Thomas J. the complainant has frequently demanded from the defendant, Byron Z., a conveyance of her interest in the premises, and an account of the rents and profits thereof, but he has always refused, and claims to own the same absolutely.

The defendants Strowbridge and Hueston do not answer. The answer of the defendant Byron Z. admits the making of the conveyance as alleged, but denies that it was made in trust, and denies all the allegations of the bill as to the causes which induced the execution of the same. Admits that since the death of Thomas J., he has received from the property, as rents and profits, about twelve thousand dollars, and that the rents now amount to the sum of five hundred and fifty dollars per month. By way of "a further and separate answer," the defendant also alleges that Thomas J., on February 27, 1868, duly made and published his last will and testament, whereby he bequeathed and devised to said defendant all his real and personal property of whatever nature and kind; that said Thomas J. died as aforesaid, leaving said will unrevoked; that the conveyance aforesaid was afterwards made by said Thomas J. to prevent the possibility of his intentions, as expressed in said will, from being defeated by the loss or destruction of the same, or any improvident disposition which he might otherwise make of his property prior to his death, and not with any intention to

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 6 Reporter, 674, contains only a partial report.]

revoke said will; and that the same was duly proven in the proper court about April 16, 1877.

The complainant excepts to so much of the answer as sets up the making and proof of the alleged will for impertinence, upon the ground that the subsequent conveyance of the same premises operated so far as a revocation of the will. The law of Oregon (section 790, Civil Code), following the statute of frauds of Charles II. (section 6, c. 3), provides that "a written will cannot be revoked or altered, otherwise" than by another writing executed by the testator in the same manner; or else by burning, tearing, canceling, obliterating or destroying the will, with the intent and purpose of revoking the same, by the testator, or in his presence and by his direction.

But notwithstanding this statute, it has always been held that a will may be revoked by implication or inference of law. 4 Kent, Comm. 521. Among these implied revocations is any act of the testator which alters the estate or interest held by him in the lands devised at the date of the will; as for instance, a conveyance of the same, or a valid contract to do so. The will takes effect only at the death of the testator. Real property acquired after making the will goes to the heir. If, therefore, the testator is not seised at the time of his death, of the same estate or interest in the premises that he was at the time of making the will, the same does not pass by the devise, but goes to the heir. Ballard v. Carter, 5 Pick. 114; Jettie v. Pickard, 4 Or. 298. This is held either upon the ground that the alteration of the estate is evidence of a change of purpose on the part of the testator; or more properly, that it works a revocation of the will by depriving the testator of the estate devised and thus leaves nothing for the will to operate upon at his death. Walton v. Walton, 7 Johns. Ch. 268; Minuse v. Cox, 5 Johns. Ch. 450; Herrington v. Budd. 5 Denio, 322; Bosley v. Bosley, 14 How. [55 U. S.] 395; Ballard v. Carter, 5 Pick. 116; Kean's Will, 9 Dana, 25; 4 Kent, Comm. 528; 2 Am. Lead. Cas. 668; 2 Greenl. Ev. § 686; 8 Bac. Abr. 500.

The statute of this state upon the subject of wills (section 9)[2] has changed this rule so far, as to provide that " a bond, covenant or agreement * * to convey any property devised or bequeathed in any last will previously made, shall not be deemed a revocation of such previous devise or bequest," but that the same shall pass to the devisee, subject to said bond, covenant or agreement. A mere agreement, therefore, to convey no longer works a revocation of a previous devise of the same property, but a conveyance or other act which passes the title and produces an alteration in the estate of the devisor, is left by the statute to have the same effect upon a prior devise as before its passage.

[2] [6 Reporter, gives § 8.]

The answer of the defendant Byron Z. admits the conveyance of the premises to himself subsequent to the making of the will; and if such conveyance was absolute as claimed by said defendant, there could be no question but it operated to revoke the previous devise to him. In that case Byron Z. would hold under the deed and not the will, because before the will took effect—December 27, 1875—the testator had conveyed all his interest in the premises to the defendant, and there was then nothing left in the former upon which it could operate or take effect. In such case the devise would be adeemed or defeated.

Upon this view of the matter, any reference in the answer to this will, except so far as the personalty is concerned, is certainly impertinent. For as to the realty conveyed by the deed, the will is non-existent and of no effect. In Kean's Will, supra, Patrick Kean devised a tract of land to John Kean and afterwards executed a deed conveying him the same land. The court held that Kean took the land under the deed and not the will, and "consequently the will was inoperative and void"—that is, so far as the land conveyed was concerned. But the bill alleges that this conveyance was made in trust for the grantor therein, and unless it was so made the complainant has no equity. The effect of the conveyance upon this view of the transaction was to pass the legal estate that was in Thomas J. at the time of making the will out of him and into the defendant Byron Z., but in trust for the use and benefit of Thomas J. It was said by Lord Mansfield in Doe v. Pott, 2 Doug. 722, that the doctrine of revocation by alteration of the estate had been carried to an absurd length in some of the English cases; and in Ballard v. Carter, supra, Parker, J., in delivering the opinion of the court, said, that in assenting to the doctrine, "we would understand by any alteration of an estate, a material alteration; one which changes the nature and effects of the seisin of the testator;" and that the court was not inclined "by anticipation to adopt as law" such cases as where the alteration was for the express purpose of giving effect to a will, or where an estate was changed to a fee by a common recovery, the testator supposing when he made his will that he had a fee, or when the testator, parting with his estate for an instant, took the same estate back again or conveyed the estate to another for his own use, but would consider them when they arose.

But in Walton v. Walton, supra, Chancellor Kent held that an agreement to sell, being in equity equivalent to a conveyance, was a revocation of a prior devise of the same property—and this, although such agreement was rescinded whereby the testator at his death held his estate in the lands free from the effect of the act which produced the revocation—substantially as though

it had never taken place. And in Bosley v. Bosley, supra, Mr. Chief Justice Taney states the rule with apparent approval which is deduced from the authorities in 4 Kent, Comm. 528, as follows: "The same interest which the testator had when he made his will should continue to be the same interest, and remain unaltered to his death, and that the least alteration in that interest is a revocation." In this case the legal estate in the premises passed from the devisor to the devisee by the conveyance of March 29, 1870 —according to the answer absolutely, but according to the bill in trust for the grantor. In the one case, the whole estate having passed from the testator and none taken back, nothing is left on which the devise can operate, and it must fail, not so much on the ground. of revocation as the want of a subject-matter on which to operate. 2 Am. Lead. Cas. 671. In the other case, the whole estate passed from the devisor also, but at the same time he took back another estate in the premises—a use to himself. And although this may be said to be substantially the same estate yet it is technically different. There was an alteration of the estate, and that, according to all the authorities, works a revocation of the devise.

The application of this rule to cases where the conveyance is inoperative and passes no estate, or where by the same instrument or transaction the testator takes back a beneficial interest in the property, doubtless had its origin in the very natural preference which the common law gave to the heir over the devisee—a stranger to the inheritance. In England since 1 Vict. c. 26, § 23, and in many- of the American states, this rule has been modified by statute so that a conveyance shall not affect the operation of a prior devise upon any interest in the property which the testator had power to devise at his death. 1 Redf. Wills, 333. Even under this rule an absolute and unqualified conveyance of the devise works a revocation of the will ex necessitate, but any disposition short of or other than this leaves the devise to stand subject to the conveyance. Under these statutes the legal estate in the premises in controversy would vest in the defendant Byron Z. at the date of and by means of the deed, while the trust estate or use given to Thomas J. would also pass to the former under the will upon the death of the latter.

If the law were not so well settled otherwise by a long and uniform course of decisions, and if the Oregon statute changing the rule as to agreements to convey had not omitted conveyances therefrom and thereby indicated the intention of the legislature to leave them to have the same effect upon a prior devise as before, I should be inclined to hold that this was a case where the alteration of the estate, being technical rather than substantial, is not sufficient to revoke the prior devise but rather' suggests an intention to anticipate or facilitate it by vesting the legal estate in the devisee at once and leaving the use to pass to him under the will upon the death of the testator.

But this point was not made in the argument for the defendant. Indeed the ground mainly relied upon for the defense was that "the question whether the will was revoked or not is a question of factum;" and that this question under the law of Oregon is in "the first instance exclusively for the probate court," and cannot be inquired into collaterally in any other; citing 1 Jarm. Wills, 106, 150, 220; 2 Greenl. Ev. § 680; State v. McGlynn, 20 Cal. 262, and other like authorities.

But as has been shown a will may be revoked by implication or operation of law as well as by the express act of the testator; and the question of revocation in this case is one of law and not of fact. The inquiry does not touch the validity of the will nor the legality of the judgment of the county court admitting it to probate. Therefore it is not necessary to consider whether by the laws of this state the judgment of such court is conclusive upon the validity of the will or not. In both Bosley v. Bosley and Ballard v. Carter, supra, it was held that the devise was revoked and that the property passed under the conveyance and not the will. But it does not appear to have been suggested that that was a collateral or any attack upon the judgment of the court admitting the will to probate. In fact, neither the will nor the judgment of the county court can be affected by the decree of the court in this suit. At most, the court will only determine that the premises in question are not within the purview or operation of ;the will—that the estate of the testator therein at the time of his death having been acquired in contemplation of law after the devise, is not affected by it. The exceptions are allowed.