## LOVEREN v. LAMPREY.

By the Rev. Stat., chap. 156, § 2, which took effect March 1, 1843, it is enacted that " any estate, right, or interest in any real property, acquired by the testator after making his will, shall pass thereby, if such shall clearly appear to have been his intention." *Held,* that by this section it was the intention of the Legislature to change the common law in regard to testamentary devises of real estate.

A will does not take effect, nor are there any rights acquired under it, until the death of the testator; and its construction is to depend upon the law as it then stands. A statute passed after the making of a will, but before the death of the testator, by which the common law is changed, will operate upon the will. To give the statute such an effect is not to make it retrospective in its operation, since it effects no rights vested before its passage.

Since the passage of the revised statutes, general words showing the intent of the testator to devise all the estate which he should own at the time of his decease will pass all his property real and personal, whether owned at the time of making the will or acquired afterwards. And this, whether the will be made before the passage of the statute or afterwards.

L. made his will in 1813. In 1825, he sold a large portion of his real estate and purchased other real estate. This he owned and occupied till his decease in 1848. By his will, after making sundry legacies, he gave to his wife all the residue and remainder of his estate wherever it might be found, to her and her heirs and assigns, to be improved and disposed of as she pleased. *Held,* that the intention of the testator was to pass to his wife, all his property owned by him at the time of his decease, after paying his debts and the specified legacies. *Held, also,* that the property acquired after the making of the will, as well as that owned at its date, passed by the will to her.

WRIT OF ENTRY, sued out March 26th, 1849, to recover a tract of land in South Newmarket, formerly Newmarket, containing about one hundred and thirty-one acres, being the homestead farm of Benjamin Loveren, late of South Newmarket, deceased.

Plea, the general issue.

Benjamin Loveren, on the 15th day of November, 1813, made and published his last will and testament, wherein he ordered that his debts should be paid, and then gave one hundred dollars to each of his brothers Reuben and Ebenezer, and the same amount to each of his sisters Anna and Dolly — also, two hundred dollars to one Newman Durrell for his services for the testator, if he should not be settled with before his decease; amounting in all to six hundred dollars. The will then contained the following clause:

" I give and bequeathe to my beloved wife, Ruth Loveren, all the residue and remainder of my estate, wherever it may be found, to her and her heirs and assigns, to be improved and dis· posed of as she pleases, hereby revoking all wills and testaments by me heretofore made or subscribed, and ratify and confirm this to be my last will and testament."

At the time of making said will, the testator was seised and possessed of a valuable real estate, situated in Newmarket, and or considerable other real estate situated in this State, and of some real estate situated in the State of Maine, and of some personal estate ; but was not seised or possessed of the farm demanded in the writ. About the year 1825, the testator sold the greater part of the real estate in Newmarket, which he had previously owned and occupied, for the sum of five thousand four hundred dollars, and purchased the demanded premises, and gave there-for three thousand two hundred dollars, and owned and occupied the same from that time until his death.

The testator never had any child. He died October 12th, 1848, seized and possessed of said farm and said other real estate, leaving the said Ruth his widow ; and his will was duly proved, approved, and allowed, November 15th, 1848.

The said Ruth Loveren, on the 21st day of October, 1848, made and published her last will and testament, wherein she gave several legacies to different individuals, amounting to over three thousand dollars, besides some specific legacies of articles of personal property. The will also contained a residuary clause, and Lewis Lamprey, the defendant, was one of the residuary legatees.

The said Ruth never had any child. She died January 6th, 1849, and her will was duly proved, approved, and allowed, February 21, 1849.

Theodore Loveren, the plaintiff, is a brother of Benjamin, and one of his heirs at law ; and there are children of two other brothers and of two sisters of the said Benjamin, who are now living and are his other heirs at law.

The said Lewis Lamprey is a son of a nephew of the said Ruth, and is now in possession of the demanded premises, and has been since the death of the said Ruth.

The parents of the said Benjamin, and of the said Ruth, died many years since.

The plaintiff claims to recover the farm as one of the heirs at law of the said Benjamin, and the defendant claims to hold the same as one of the residuary legatees of the said Ruth.

The parties agreed that judgment should be rendered for the plaintiff or for the defendant according to the opinion of the Court upon the foregoing case. And the questions arising upon said case were transferred to this Court for determination.

*Emery* and *Marston*, for the plaintiff.

I. After-purchased lands do not pass by the residuary clause in the will, but go to the heirs of the testator. *George* v. *Green*, 13 N. H. Rep. 522, and cases there cited.

II. This case is not within the provisions of the second section of chap. 156, Rev. Stat. Because that clause of the statute is not to be applied retrospectively so as to affect existing wills, notwithstanding the testator lives until after the passage of the act.

Statutes are always presumed to be prospective. They are not to be construed so as to have a retrospective action, even in cases where the Legislature have the power, unless, by express words or by clear implication, the intention of the Legislature to give such retrospective action is manifest. *Gilmore* v. *Shuter*, 2 Lev. 227; 2 Shower, 17; 4 Greenl. 139; *Dash* v. *Van Kleeck*, 7 Johns, 499; 2 Gallison, 105; *Woast* v. *Winneck*, 3 N. H. Rep. 473; *Briggs* v. *Hubbard*, 19 Vermont, 86; *Goshen* v. *Stonington*, 4 Conn. 210; *Somersett* v. *Dighton*, 12 Mass. 383; *Whitman* v. *Hapgood*, 10 Mass. 473; *Ashburnham* v. *Bradshaw*, 2 Atk. 36; *Attorney-Genl.* v. *Andover*, 1 Ves. Jr. 225; *Attorney-Genl.* v. *Hartwell*, 1 Ambler, 452; Dwarris on Statutes, 680 to 685; *Duppa* v. *Mayo*, & notes, Saunders' Rep. 276; *Gore* v. *Gore*, 2 P. Wms. 31; *Wind* v. *Jekel*, 1 P. Wms. 575; 2 Wooddeson Lect. 210; *McKinnon* v. *Thompson*, 3 Johns. Ch. Rep. 307; Ib. 312.

Statutes in derogation of the common law are to be construed strictly. 4 Mass. 471; 15 Ib. 205; 9 Pick. 496; 13 Ib. 284.

The best construction of a statute is to expound it as near the

common law as it may be. It is a rule that the heir at law is not to be disinherited, unless such appears clearly to be the intention of the devisor. *Hayden* v. *Stoughton,* 5 Pick. 536. Words are not to be strained to disinherit the heir. 3 Comyn, Dig. 428, Devise, No. 22. As to what words make an estate by implication, see 3 Comyn Dig. 412, Devise, No. 12 ; *Wilkinson* v. *Adair,* 1 Ves. & Beames, 466.

The title of the heir at law is plain and obvious, and no words in a will ought to be construed in such a manner as to defeat it, if they can have any other signification. A contract is to be construed according to the law of the place where it is made and is to be performed, and not according to the law of the place where either party may happen to move. *Milan* v. *Duke of Fitts James,* 1 B. & P. 142, and notes. A deed is to be construed by the law in force where it was delivered. 10 Mass. 473.

A man's right to make his will depends upon the law existing at the date of it. He is presumed to know the law, and to make his will in reference to the law upon which the validity and operation of his will depends. A will is to be construed so as to effectuate the intention of the testator, and that intention is in all cases presumed to conform to, and be regulated by the law.

As to the construction of similar statutes in other States, see Statutes of Virginia of 1785, and *Allen* v. *Harrison,* 3 Call's Rep. 251. New York Rev. Stat. 57, § 5, and *Van Kleeck* v. *Dutch Church,* 20 Wendell, 499. Statutes of Conn. of 1831, and *Brewster* v. *McCall,* 15 Conn. Rep. 290. Statute of Penn. April 8, 1833, and *Mulloch* v. *Souder,* 5 Watts & Serg. 198 ; *Mullen* v. *McKilog,* 5 Watts, 399. In *Mulloch* v. *Souder,* it was held, that the statute did not apply to a will dated before its passage.

III. If it were held that our statute might have a retroactive operation, there is nothing within this will to bring it within the provision, because there is no such manifestation of intention as the statute requires. Mere general words of devise, " all my property," " all my estate, wherever situated, &c.," in a will

executed before the statute, are clearly insufficient to show the testator's intention to pass after-acquired property.

If the testator had died before the statute, it is clear that the will could not have been held to pass the after-acquired estate. It would have been held that the testator was presumed to know the law; that he intended to devise what he might devise; that the language was entirely consistent with that presumption, and that he was aware of the rule by which, as to real estate, the will spoke of the time *when it was made*. The will is a foundation, and an instant incipient disposition. There must therefore be something for it to operate upon. *George* v. *Green*, 13 N. H. Rep. 527. Its language must be construed with reference to the state of things existing at the time it is made. Willes' Rep. 297; 3 Maul. & Sel. 306; 5 Pick. 538.

To say that such a residuary clause, made prior to the statute, clearly shows the intention of the testator to do what he had no power to do, would be to allege that no testator understood what is characterized (1 Met. Rep. 391,) as a familiar rule of law, when, according to another well settled rule, every one is presumed to be acquainted with it.

In *Cushing* v. *Aylwin*, 12 Met. 169, and *Pray* v. *Waterston*, 12 Met. 262, the Court rely somewhat upon the argument derived from the language of the next section of the statute, which is not found in the New Hampshire statute; and in both cases the Court found something in the phraseology of the will indicative of the intention of the testator, beyond the mere general words devising the residuum. So far as those cases proceed upon general principles, all the authorities are against them.

It may be doubtful whether the Legislature can, in any case, interfere with the provisions of existing wills, and apply new rules of construction which would alter the disposition which the testator intended to make. The authorities already cited show that every where retrospective statutes are to be construed with the utmost strictness, and confined within the narrowest limits. They are against the principles of sound legislation and general jurisprudence, are dangerous in their tendency, and likely to produce very great injustice. "Retrospective laws are highly injurious,

oppressive, and unjust.   No such laws, therefore, should be made, either for the decision of civil causes or the punishment of offences."   N. H. Bill of Rights, § 22.

We submit that such a construction of the second section of chapter 150, Rev. Stat., as was given to a similar statute in Massachusetts, by the decisions in 12 Metcalf, above referred to, would be a palpable violation of our Constitution.

*Christie* and *Kingman*, for the defendant.

The general question in this case, and the one on which the result depends, is, whether the title of Benjamin Loveren to the demanded premises, on his death, passed to his wife, Ruth Loveren, by and under his last will and testament, or descended to his heirs at law.

Had said Benjamin died prior to the first of March, 1843, the time when the revised statutes took effect, it is conceded that the title to the premises in question would not have passed by his will to said Ruth, but would have descended to his heirs at law ; for the reason, that by a will, that took effect by the death of the testator prior to that time, real estate acquired by the testator, subsequent to the time of the execution of his will, whatever were the terms of the will or the intention of the testator therein expressed, could not pass thereby, but would descend to his heirs at law ; and this on account of certain technical rules or doctrines of the common law.   *George* v. *Green*, 13 N. H. Rep. 522.

By the Rev. Stat. chap. 156, § 2, the law of this State, on this subject, was altered, and provision made, " that any estate, right, or interest, in any real property acquired by the testator after making his will, shall pass thereby, if such shall clearly appear to have been his intention."

I. The provision of this statute applies as well to wills made before as to those made after the time when it took effect, provided the testator survived the time of its taking effect; or, in other words, if the will had not taken effect, and rights, vested under it, or under the laws of descent in the subject-matter thereof, prior to that time by the death of the testator.   A will, while the testator lives, is ambulatory, and no rights vest under it, nor

under the laws of descent, in or to the subject-matter thereof; and a statute authorizing a will, already made by a testator who is still alive, to operate as and have the effect he intended and desires it to have, affects no vested rights, and only furthers the testator's purposes and desires, and is not therefore within the meaning of the 22d section of the Bill of Rights, or in any proper sense, a retrospective law. This point is fully sustained by the following cases. *Cushing & al.* v. *Aylwin,* 12 Met. 169 ; *Pray & al.* v. *Waterston & al.,* 12 Met. 262 ; *De Peyster* v. *Clendenning,* 8 Paige's Rep. 295 ; *Bishop & al.* v. *Bishop & al.,* 4 Hill's (N. Y.) Rep. 138 ; *Bogardus* v. *Bogardus,* Sup. Court, N. Y., Sept. T. 1849, 12 Law Reporter, 370 ; *Miller* v. *Dennett,* 6 N. H. Rep. 109 ; *Bughardt* v. *Turner,* 12 Pick. 539 ; *Annable* v. *Patch,* 3 Pick. 363.

II. The language, " all the residue and remainder of my estate wherever it may be found," used by the testator in the devise to his wife, sufficiently indicates the intent to convey after acquired property. When a will purports to dispose of a testator's whole estate, or of the whole of the residue of his estate, as in this case, the intention is to dispose of all the estate which the testator may or shall own at the time of his death, and this is always to be inferred unless there be something in the will opposed to such inference. *Wait* v. *Belding,* 24 Pick. 136 ; *Brimmer* v. *Sohier,* 1 Cush. 133 ; *Cushing* v. *Aylwin,* 12 Met. 169 ; *Pray & al.* v. *Waterston & al.* 12 Met. 262.

Most of the authorities cited, and legal axioms stated by the demandant's counsel, though sound enough in themselves, are thought, and will be found on examination, to have little, if any just bearing upon the true questions in this case.

The several cases to which we have referred, fully sustain the two positions for which we contend, and which alone are necessary to our defence. And we submit that the doctrine of these cases rests upon good reason and sound legal principles.

EASTMAN, J. The demandant, Theodore Loveren, claims the premises for which this suit is instituted, as brother and heir of Benjamin Loveren deceased. The tenant, Lewis Lamprey,

claims them as residuary devisee of Ruth Loveren, the widow of the said Benjamin.

There is no question made as to the heirship of Theodore Loveren. It is conceded that he is the brother of Benjamin, and that he is entitled to judgment in his favor, unless Benjamin, by his will, devised the property to his wife, Ruth. Nor is there any controversy that Lewis Lamprey, the tenant, is one of the residuary devisees of Ruth, and as such has a good defence to this action, if by the will of Benjamin the premises passed to Ruth.

On the 15th of November, 1813, Benjamin made and published his last will and testament, and, after bequeathing sundry legacies to different individuals, introduced into it the following residuary clause. "I give and bequeathe to my beloved wife, Ruth Loveren, all the residue and remainder of my estate, wherever it may be found, to her and her heirs and assigns, to be improved and disposed of as she pleases ; hereby revoking all wills and testaments by me heretofore made or subscribed, and ratify and confirm this to be my last will and testament."

The said Benjamin Loveren died on the 12th day of October, 1848, and said will was proved and allowed on the 15th of November following. Whatever real estate he owned at the time of making his will, and which had not been disposed of prior to his death, and was not necessary for the payment of his debts and the specified legacies, vested in his wife at his decease, by virtue of this will. So far there can be no controversy. But it appears by the case, that, in 1825, he sold the greater part of his real estate for the sum of five thousand four hundred dollars, and purchased the demanded premises for the sum of three thousand two hundred dollars, and owned and occupied the same, from that time until his death. The property demanded, then, was real estate acquired after the making of the will. Did it pass by the will ? This is the question upon which the whole case turns.

The English doctrine undoubtedly is, that real estate acquired after the making of the will, does not pass thereby. And this, notwithstanding the language may be such as would show clearly the intention of the testator that it should pass, were it not for the legal, technical construction which it has for a long time re-

ceived. In other words, certain phrases and expressions, when introduced into wills, have been construed to mean something different from their ordinary, common acceptation.

It is also equally well settled, by the same decisions, that after-acquired personal property will pass, and that the same general expressions which will carry personal property, will not pass the real estate. *Butler* v. *Baker*, 3 Coke, 25 a; *Bunker* v. *Coke*, 1 Salk. 237; *Doe* v. *Underdown*, Willes, 293; *Hogan* v. *Jackson*, Cowp. 305; *Brydes* v. *The Duchess of Chandos*, 2 Ves. Jr. 427; *Harwood* v. *Goodright*, Cowp. 90; *Wind* v. *Jekyl*, 1 P. Wms. 572; *Durour* v. *Motteux*, 1 Ves. 322; 2 Black. Com. 378; *Wyndham* v. *Chetwynd*, 1 Burrows, 429.

At common law, the English rule has been the received doctrine in many of the jurisdictions in this country, our own among others. *Ballard & al.* v. *Carter*, 5 Pick. 114; *Mimuse* v. *Cox*, 5 Johns. Ch. Rep. 441; 4 Greenl. Rep. 341; *George* v. *Green*, 13 N. H. Rep. 521. Various reasons have been given for the existence of the rule, and its origin traced to different causes. It is not necessary to repeat them here. They may be found in Powell on Devises, 151, 152; *Ballard & al.* v. *Carter*, 5 Pick. 114; 2 Black. Com. 378; *George* v. *Green*, 13 N. H. Rep. 521. But these reasons, we apprehend, are more satisfactory to the landed interests and policy of England, than to the general sentiment which pervades our own country. Hence we find that the Legislatures of several of the States have swept away many of the established rules in the construction of wills, and, as is well observed by Chanceller *Kent*, relieved the Courts from the study of a vast collection of cases, and from yielding obedience any longer to the authority of many ancient and settled rules which were difficult to shake and dangerous to remove. Massachusetts, Connecticut, New York, and several other States, have taken this course; not only in regard to the disposition of after-acquired real estate, but in many other respects. Speaking of some of the alterations in New York, Chancellor *Kent* further says, " their simplicity and good sense recommend them strongly to our judgment; and they relieve the law from a number of technical rules which are overwhelmed in a labyrinth of cases;

Loveren *v.* Lamprey.

and where detected and defined, they are not entirely free from the imputation of harshness and absurdity.   The tendency of the provisions is to give increased certainty to the operation of a devise."

The statute of this State took effect March 1st, 1843, and being passed for the purpose of altering the common law, it is our duty, we think, to give it as liberal a construction as judicial decisions will warrant, that the intention of the Legislature may be properly carried out.   The provision which is particularly applicable to the present case, is as follows:   " Any estate, right, or interest, in any real property, acquired by the testator, after making his will, shall pass thereby, if such shall clearly appear to have been his intention."   Rev. Stat. Chap. 156, § 2.

Notwithstanding this statute, real estate, as the statute itself shows, is not to pass, unless it shall clearly appear that such was the intention of the testator.   It becomes therefore important to determine, what was the intention of the said Benjamin as expressed in his will.

At the time of making the will he had no children, and no parents living; and he had no children afterwards.   His nearest of kin were his brothers and sisters.   To two of his brothers and sisters he gave legacies of one hundred dollars each.   But he gave nothing to the demandant, neither did he make any provision whatever for his wife, except such as is to be found in the residuary clause.   Situated as he was, then, it would be a very unusual if not unnatural course, that, without making any specific provision for his wife, he should make his will simply to give these few legacies, and then leave his whole estate to be administered upon according to law.   Had he entertained any such intention, he would in all probability have so said, as one short paragraph could have expressed the whole matter.   But, independent of the intention which is to be gathered from the situation of the testator, and the general tenor of the will, the phraseology of the residuary clause is sufficient to show the intention.   He gives and bequeathes to his wife all the residue and remainder of his estate wherever it may be found.   By this, the meaning is obvious, that every thing not before disposed of should pass to her.

And he gives it to her and her heirs and assigns, and to be improved and disposed of as she pleases. This is an absolute unconditional bequest, and the expressions clearly pass all the property, independent of the legacies, which the testator owned at the time of making the will. They are sufficient to carry an estate in fee. A devise of all my *estate,* all my *interest,* all my *property,* all my *right,* all my *title,* and many other expressions of the like import, will carry an estate of inheritance if there is nothing in the other.parts of the will to limit or control the operation of the words. So, if an estate is given to a person generally or indefinitely, with a power of disposition, it carries a fee. *Doe* v. *Morgan,* 6 Barn. & Cres. 512; Comyn's Dig. Title Devise, n. 4; 4 Kent's Com. 335.

It is clear, also, that the phraseology is such as would pass all the *personal* property owned at the time of the decease. " General words," says *Shaw,* Ch. J., " may as well include all which a testator expects to acquire, as what he then actually owns. The term *all my property,* may as well include all which may be his at the time of his decease, as all which is his at the date of his will; and will be so construed unless there be words in the description which limit and restrain it." *Wait* v. *Belding,* 24 Pick. 136. And in *Cushing et. al.* v. *Aylwin,* 12 Met. 169, the Court say, " We think it is generally true that where a will purports to dispose of the testator's whole estate or property, the intention is to dispose of all the estate or property of which the testator may be the owner at the time of his death, unless some thing in the will should be opposed to such an inference." So in *Brimner* v. *Sohier,* 1 Cush. 133, the matter is treated as settled, that wherever there is a bequest of the whole estate or of all the residue of the estate of the testator, the after-acquired personal property passes. If, therefore, prior to the passage of the statute, the words of this will would be sufficient to carry all the personal property the testator owned at the time of his death, and the statute has removed the distinction existing at common law, between bequests of after-acquired personal and real estate, there would seem to be no good reason for not applying the same signification to the words in the one case as in the other.

Had this will, then, been made subsequent to the passage of the Revised Statutes, we should find no difficulty in holding that all the property, real and personal, which the testator owned at the time of his decease, and which was not specifically devised or needed for the payment of his debts, passed by the residuary clause of his will to his wife Ruth. In this conclusion we are sustained by the authorities cited.

But the will was made in 1813, many years before the passage of the Revised Statutes. The testator, however, did not die till 1848. And hence the question arises, whether a will made prior to the passage of the Revised Statutes, but the testator not dying till afterwards, can be affected by that section of the statute which we have quoted.

The argument against allowing the will to operate upon the after-acquired real estate is based upon the position, that, by giving the statute such a construction, it will be made to operate retrospectively. If such be the effect, it is clear that the property cannot pass; for confessedly and rightfully the general doctrine in this country is, that *ex post facto* and retrospective laws are unconstitutional, inoperative, and void. Authorities upon this point are numerous. N. H. Bill of Rights § 23; *Merrill* v. *Sherburne et al.* 1 N. H. Rep. 199; *Woart* v. *Winnick*, 3 N. H. Rep. 473; *Dow* v. *Norris*, 4 N. H. Rep. 19; *Clark* v. *Clark*, 10 N. H. Rep. 381; *Bedford* v. *Shilling*, 4 Serg. & Rawle, 401; *Brunswick* v. *Litchfield*, 2 Greenl. Rep. 28; *Society for Propagating the Gospel* v. *New Haven*, 8 Wheeler, 493. But what is a retrospective statute within the meaning of our constitutions and laws? It is not a remedial statute, properly so called; neither is it one which is to operate upon contracts subsequently made, or rights subsequently acquired; but one which impairs contracts already existing, and affects and changes rights already vested. And what are vested rights, but such as are determined, settled, *fixed;* such as are not liable to any contingency? Unless our conception of the meaning of "vested rights" is entirely erroneous, we cannot discover wherein any thing had become vested by the will of Benjamin Loveren until his decease. Up to that time no rights whatever were fixed,

but all was expectant, contingent, and uncertain. It was in his power to destroy his will at any time, or make a new one, and no one could say that he had the least legal interest in his property till after his death.

In *Miller et al.* v. *Dennet et al.* 6 N. H. Rep. 109, it was decided that the statute of 1809, directing how joint tenancies should be created, was not, when applied to conveyances made *before* the passing of the act, a retrospective law within the meaning of the Constitution, nor a law impairing the obligation of a contract. Chief Justice *Richardson*, in delivering the opinion of the Court, holds the following language: " The statute applied to the deed, in this case, would take away no vested right. Neither John nor William had any vested interest in the moiety of the other. The acquisition of the whole estate by survivorship, would have been, in either, nothing more than a hope or expectation, like the expectation of a child to inherit the estate of a parent. The statute, thus applied, operates upon an existing estate, but not retrospectively within the meaning of the Constitution. It can no more be considered a retrospective law than a statute altering the descent of intestate estates. It neither gives nor takes away any right or interest." To the same effect are *Holbrook* v. *Finney*, 4 Mass. 568; *Miller* v. *Miller*, 16 Mass. 59; *Annable* v. *Patch, et al.* 3 Pick. 360, 363; *Binghart* v. *Turner*, 12 Pick. 539. These decisions, although not based upon facts like those involved in the present case, yet promulgate doctrines analagous to those contended for by the tenant, and quite as decisive.

But we are not without authority upon the precise point under consideration. We have before suggested that several States, as well as our own, have passed statutes brushing away the distinctions existing between real and personal estates, and making the devise operate upon all the real estate owned by the testator at the time of his death. These statutes have most of them undergone a judicial examination. The statute of New York took effect in 1830, and was in the following words: " Every will that shall be made by a testator, in express terms, of all his real estate, or in any other terms denoting his intent to devise all

his real property, shall be construed to pass all the real estate which he was entitled to devise at the time of his death." New York Rev. Stat. vol. 2, p. 57, § 5. The case of *De Peyster* v. *Clendenning*, 8 Paige's (N. Y.) Rep. 295, was decided in 1840. The will in controversy was made in 1828, but the testator did not die till 1836. In delivering the opinion, Chancellor *Walworth* says: " Although this will was made before the Revised Statutes went into effect, yet, as the testator died long afterwards, the validity of the trusts and the provisions of the will must depend upon the law as it was when the will took effect by his death." " A will does not take effect from its date, but only from the death of the testator." The case of *Bishop et al.* v. *Bishop*, 4 Hill's (N. Y.) Rep. 138, was decided in 1843. There, the will was made in 1825, but the testator did not die till 1840 ; and the Court say : " By the law as it stood in 1825, when the will was made, the estate would have gone to the heirs at law of the testator ; but the statute which took effect in 1830, ten years before the testator died, has given a different direction to the property, The will did not take effect until the testator died, which was in 1840, and then the case fell under the influence of the new statute." These two cases must be regarded as settling the question in New York. The case of *Van Kleeck* v. *The Dutch Church*, 20 Wendell, 499, decided in 1838, and cited by the plaintiff's counsel, is not in conflict with these decisions. The point did not arise in that case, and was not decided ; and the most that can be drawn from it is the dictum of an honorable Senator, incidentally stated, in delivering his views upon the question before the Court.

The statute of Massachusetts went into operation April 30, 1836, and is as follows : "Any estate, right, or interest in lands acquired by a testator, after the making of his will, shall pass thereby in like manner as if possessed at the time of making the will, if such shall clearly and manifestly appear, by the will, to have been the intention of the testator." Mass. Rev. Stat. chap. 62, § 3. In *Cushing et al.* v. *Aylwin*, 12 Met. 169, the will was made in 1834 ; the property in dispute was purchased by the testatrix in 1840, and she died in 1841. The Court, in the

Loveren v. Lamprey.

opinion given, used this language : " The demandants contend that the Revised Statutes do not apply to a will previously made. But we think there is no sufficient reason for this limited construction of the statute. The object of the statute was to obviate an inflexible rule of the existing law, which had been found to operate injuriously, by defeating, not unfrequently, the intention of the testator, however clearly expressed ; and there seems to be no good reason why the provision should not apply as well to wills made before as to those made after the statute, where the will had not taken effect before that time by the death of the testator. That the legislature had the constitutional power to enact such a law is not to be denied ; and we think that such was the intention." This case, it will be perceived, is precisely in point. So, also, is *Pray et al.* v. *Waterson et al.* 12 Met. 262 ; and we do not find any thing in the Massachusetts reports indicating a different doctrine. In the last case the Court also remark, that the object of the statute was to abolish the rule of the common law, which, in most instances, defeats the intention of those who devised all their estates.

It would seem, however, that a somewhat different doctrine prevails in Connecticut and Pennsylvania. By the statute of Connecticut it is enacted, that " any person having power to dispose of real estate by will or testament, may, by such will, devise real estate not only by him owned at the time of making the same, but acquired afterwards." In *Brewster* v. *McCall*, 15 Conn. R. 274, it was held that the after-acquired real estate would not pass where the will was made prior to the passage of the statute. The ground of the decision was stated to be, that the general rule is, that statutes shall not be construed retrospectively, unless, by express terms or otherwise, such appears to be the manifest intent of the legislature. The examination of the point was very brief, and the authorities quoted to sustain it of a general character. It will be perceived, also, that the phraseology of this statute differs to some extent from that of Massachusetts and our own. The two latter provide that the property *shall* pass, while that of Connecticut enacts that any person *may* by such will devise, &c.

The Pennsylvania statute is very similar to our own, and is in these words : " The real estate acquired by the testator after making his will, shall pass by a general devise, unless a contrary intention be manifest on the face of the will." Law of Penn. passed April 8, 1833. In *McCullock* v. *Souder*, 5 Watts & Serg. 198, it was held, that, where the will was dated prior to the passage of the act, it could not operate upon after-acquired property ; that such a construction would be giving the act a retroactive effect ; and that the act of the assembly was to be left to operate upon wills made after the passage of the act. The opinion of the Court was very brief, and based upon a few decisions made upon the Statute of Mortmain of 9th George II., chap. 36, but which do not appear to us very satisfactory in sustaining the opinion.

The case from 3 Call's (Va.) Rep., cited by the plaintiff's counsel, turned principally upon the question of the intent of the testator, and not upon the point now under examination. After devoting considerable time to the consideration of this case, the conclusion to which we have arrived is, that the intention of the testator was to give his wife all his property, real and personal, which he might own at the time of his decease, after paying his debts and the specified legacies. That the will, not taking effect till the death of the testator, falls under the influence of the Revised Statutes ; and to construe the statute as taking effect upon the will is not giving it a retrospective operation. And we arrive at this result the more readily as thereby we carry out the intention of the testator, which is the acknowledged fundamental principle in the construction of wills.

*Judgment for the tenant.*