## LOUIS BILLS, Respondent, v. THE NEW YORK CENTRAL RAIL-ROAD COMPANY, Appellant.

Plaintiff's cattle were transported by defendant from B. to W. A. under a contract which provided, among other things, that in consideration of a reduced price for transportation, plaintiff would assume the risk of damage sustained by delay in transportation; also that plaintiff should load and unload at his own risk, defendant furnishing help, and that plaintiff should send a person with the cattle to take charge of them. The train was delayed by a flood which submerged the track, and the cattle being without food were injured. In an action to recover damages for the injury, *held*, that defendant was not bound to unload the cattle when the train was stopped; but that it was its duty, upon reasonable request, to so place the cars in which the cattle were as to be convenient to the usual and accessible means of unloading, if practicable, and for a failure so to do it was liable.

Plaintiff's agent made such a request; the engine drawing the train was disabled; it appeared, however, that defendant had engines at U., forty-three miles distant; also that other motive power might have been readily obtained. The court, after referring to the evidence on this subject and to a statement of defendant's conductor that he did not telegraph to U., submitted it to the jury as a question of fact whether it was not gross negligence for defendant to omit to send for assistance if help could readily have been obtained. *Held*, no error; and that this was so, even if the fair import of the charge was that the jury might determine that it was negligence not to send for assistance to U.

The engine of the train was disabled by the engineer running it into the water, and there was evidence tending to show negligence on his part in so doing. The court charged that if the engine was disabled by the negligence and recklessness of defendant's agents, then their refusal to place the cars where plaintiff could unload was not to be excused by an absence of motive power. *Held*, no error; that defendant could not plead its own previous negligence as an excuse for its inability to perform a distinct and affirmative duty.

Also, *held*, that plaintiff's damages could not be mitigated by speculating upon what might have happened had his request been granted and the cattle unloaded.

When the train was at U., and those on board were warned of the high water; plaintiff's agent requested the conductor to place the cars there in a convenient position for unloading; this request was declined. The court was asked but declined to charge that defendant was not liable for such refusal; it charged, however, that if the jury believed the conductor had reason to think he could run the train through without serious detention, defendant would not be liable because of such refusal. *Held*, no error.

(Argued January 20, 1881; decided February 1, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, in favor of plaintiff, entered upon an order made April 8, 1880, overruling defendant's exceptions, which were ordered to be heard at first instance at General Term and directing judgment on the verdict.

This action was brought to recover damages for alleged negligence of the defendant in the performance of a contract as a common carrier for the transportation of eight car-loads of cattle. A memorandum of decision on former appeal will be found in 53 N. Y. 608.

The plaintiff's cattle were transported by the defendant from Buffalo to West Albany, under a special contract, which provided, among other things, that in consideration of a reduced price for transportation the plaintiff should assume certain risks, and among others, those of injuries which the cattle might receive in consequence of their maiming themselves or each other, or from delays, or on account of being injured, and also the risk of any loss or damage which might be sustained by reason of any delay in the transportation.

It was further stipulated that the plaintiff should load, transship and unload the cattle at his own risk, the defendant furnishing the necessary laborers to assist, and also that the plaintiff should send some person on the same train with the stock, to take charge of it, who should be carried free of charge.

The time ordinarily consumed in the transportation from Buffalo to West Albany was from twenty-four to twenty-six hours. The train in question left Buffalo on Monday, March 16, 1868, at about 10 A. M., but by reason of an extraordinary flood the defendant's track was submerged at Palatine Bridge, fifty-four miles west of Albany and forty-three miles east of Utica; by this obstruction the train was delayed at Palatine Bridge about twenty-four hours, and did not arrive at Albany until the afternoon of Wednesday, the 18th of March. During all this time the cattle had remained upon the train, without food, and on their arrival at Albany, were found to have been seriously injured by the detention.

The evidence on the part of the plaintiff tended to establish

that after the train had arrived at Palatine Bridge, and it had been ascertained that it could proceed no further, the agent of the plaintiff in charge of the cattle requested those in charge of the train to haul it on a side track, where there was a platform, for the purpose of enabling him to remove the cattle from the cars, and feed and water them, but that this request was refused.

The further material facts appear in the opinion.

*Samuel Hand* for appellant.   Defendant was not obliged to unload the cattle at any place except that contemplated in the contract.   (*Penn* v. *B. & E. R. Co.*, 49 N. Y. 204.)   The whole injury being from delay, and it being expressly stipulated that damage from delay should be at the risk of the plaintiff, defendant was not liable.   (*Cragin* v. *N. Y. C. R. R. Co.*, 51 N. Y. 61; *Wibert* v. *Erie*, 2 Kern. 245; *Conger* v. *H. R. R. R.*, 6 Duer, 375.)   A carrier of cattle is not an insurer of animals against injuries arising from their nature and propensities, and which could not be prevented by foresight, vigilance and care.   (*Penn* v. *Buffalo & E. R. R. Co.*, 49 N. Y. 204; *Clark* v. *Rochester & Syracuse R. R. Co.*, 14 id. 570; *Michigan S. & N. J. R. R. Co.* v. *McDonough*, 21 Mich. 165; *Kendal* v. *Southwest R'y*, L. Rep., Exch. 373; Angell on Carriers, § 214 a; *McManus* v. *Lancashire & York R'y Co.*, 2 H. & N. 693; *Carr* v. *R'y Co.*, 7 Exch. 711, B. PARKE; *Blower* v. *The Gt. W. R'way*, L. Rep., 7 C. P. 655.)   The contract was fully performed by defendant.   (*Penn* v. *Erie R. R.*, *supra*; *Farrar* v. *Camden & Amboy R. R. Co.*, 55 Penn. St. 211; *Dow* v. *N. J. S. Nav. Co.*, 1 Kern. 485; *N. J. Steam Nav. Co.* v. *Merchants' Bk.*, 6 How. [U. S.] 344.)

*Hamilton Harris* for respondent.

FINCH, J.   On a former appeal\* we held in this case that the defendant was not bound to unload the cattle, when the train was stopped near Palatine Bridge by the overflow of the Mohawk, and could not be made liable for such omission or re-

\*See mem. 53 N. Y. 608.

fusal.    But we also held that it was the duty of the defend-
ant's agents in charge of the train, upon reasonable request, to
so place the cars loaded with plaintiff's cattle as to be convenient
to the usual and accessible means of unloading, if that was
practicable, and that a failure to do so carried with it a liability
for resultant damages.

The case was tried the second time upon this latter theory,
and the one question of fact, litigated and submitted to the jury,
was whether the conductor of the freight train unreasonably
refused to place the cars containing plaintiff's cattle conven-
ient to the shute or platform necessary to the work of unload-
ing them, when it was entirely practicable so to have done.
The verdict of the jury in plaintiff's favor must be held to have
determined this issue in accordance with his version of the trans-
action and to dictate the facts which are controlling in the case.

The errors complained of on the part of the appellant are
based upon the manner in which the case was submitted to the
jury, and are raised by exceptions to the charge, and to refusals
to charge as requested.

The first error alleged is that the judge charged substantially
that the jury might find the defendant liable for gross negli-
gence for refusing to send to Utica, forty-three miles away, for
engines to move the cars, so that plaintiff might unload.    This
is a broader statement of the charge than is warranted by its
terms.    What the court did say should be taken together and
in its natural connection.    The judge said, "the next question
is, could the request, if made, have been granted by defendant;
did it have the motive power there?    Ernest Bills declares it
had; the conductor says it had not, and also testifies that he
did not telegraph to Utica, where defendant had several en-
gines.    I leave it as a question of fact for you to decide whether
it was not gross negligence in the company to omit to send for
assistance when such help could readily have been obtained."
This was not at all an instruction as matter of law that it was
negligence not to send to Utica for help.    The presence of en-
gines there was only one of the elements involved in the ques-
tion submitted.    What the court did charge was that "if help

could readily have been obtained" the jury might find the fact of negligence from the omission to send for it. There was very much of evidence tending to show that help was near and could be readily obtained. According to the statements of plaintiff's witnesses the work engine which did come to their relief was passed by the freight train at St. Johnsville, a few miles away. That engine did draw back the cars, from the flood to the station at Palatine Bridge. It is not easy to see why, if it could do that, it could not also do the further work of placing the cattle cars alongside of the shute or platform. There is some evidence that it became disabled; when, we do not know. There is no proof that it happened before plaintiff's request or its frequent repetitions. When first made the engine was evidently in working condition. And it is significant, that when last made, at about 8 o'clock in the evening, the refusal of the conductor is grounded, not on any alleged disability of the work engine, but solely on the ground that the men were all tired out. If all the motive power at hand was then in fact disabled, it is very strange that the fact was not stated, and that a much less cogent reason was assigned for the refusal. It further appears that at some time during the day a train came from Fonda with three or four engines. There were, therefore, facts indicating that motive power might have been readily obtained, if only sought for, and that without sending so far away as Utica. The question of negligence was left to the jury on all these facts, and with no stronger instruction than that help should have been sought if it could have been readily obtained. But if 'the natural and fair import of the charge was that the jury might determine, from all the facts before them, that it was negligence not to send for assistance to Utica, we still think the charge was not objectionable. If, as the defendant claimed, and as was broadly asserted at the argument, there was no motive power present, competent to move the train, when plaintiff's agent requested opportunity to unload, it must follow that the nearest help was at Utica. We cannot say as matter of law that the defendant's agents were not bound to send for the nearest help in the emergency, even if it was forty

miles away.   The question of negligence, under the circumstances, was one of fact.   We may have an opinion about it, but it is the judgment of the jury which controls.   If, as was said on the argument, we ought not to lay it down, as a rule of law, that it was negligence not to send to Utica for engines, neither, on the other hand, ought we to say, as matter of law, that it was not negligence to omit the effort, in the unforeseen emergency which had arisen, and under the circumstances established.   The importance of not invading the province of the jury in actions of this nature was well stated in *Willis* v. *Long Island R. R. Co.* (34 N. Y. 679).   It was said that on the trial of such an issue, if there is any doubt, however slight, either as to what facts are established by the testimony, or as to the conclusion in respect to the fact of negligence that may be drawn legitimately from the circumstances proved, by the average of men of common sense, ordinary experience, and fair intentions, the case should not be taken from the jury.   If there was no help nearer than Utica, to say that the conductor was not bound to send for it, is to measure in miles, and by distance, as matter of law, the duty of the defendant.   If forty-three miles is too far, how many miles shall the law determine as the range within which he ought to seek help ?   To say that he was not bound to send to Utica for assistance because it was forty-three miles away is to say that he could leave these cattle to starve without an effort, if no help was nearer.   The call for help would take but minutes.   Two or three hours, perhaps, would have brought it, at an expenditure to the company, altogether trifling compared with its possible liability for the injury threatened.   An unforeseen emergency had arisen, one not provided for by the ordinary facilities and routine.   What could be reasonably done to ward off the evil should have been done, and if nothing could be done except to send to Utica for an engine, because there was no motive power nearer, obtainable or likely to be obtained within a reasonable time, the question of duty, under all the circumstances of the case, was very clearly one for the good sense and judgment of the jury and not a question of law for the court.   We do not, therefore,

appreciate the alleged error of the charge.    We think it fairly and correctly presented the question of negligence, in not sending for motive power which could be readily obtained, to the consideration of the jury.

The next exception argued was taken to the following language of the charge, viz.: "If the engine was disabled by the express negligence and recklessness of the defendant's agents, then their refusal to place the cars where plaintiff could have unloaded them, if such refusal was made, was not to be excused by an absence of motive power to comply with the request." The criticism at the bar upon this proposition is that there was no evidence of negligence in running the train into the water; that it was the duty of the conductor to proceed to his destination, if possible ; and, as other engines, with lower fire-boxes, had succeeded in passing the flood, it was his duty to make the attempt. · This argument is very just and forcible, and doubtless was urged to the jury as a reason why they should draw a conclusion in accordance with it.    It may be, however, that they did not, and hence it is necessary to see if there was any evidence from which an inference of negligence was possible. All the facts of the flood were before the jury.    News of the danger in advance reached this freight train at Utica and alarmed the plaintiff's agent, and caused a long delay at that point for information or orders.    When the train reached Palatine Bridge it found ·the inundation.    This was caused by an ice gorge at a narrow point of the river which set the water back over the adjoining lands.    The water, at the station, was already one foot over the rails and rapidly rising.    The conductor knew that until the ice gorge gave way the water must continue to rise.    He knew, too, from the experience of former occasions, that the high water was likely to be brief, and if he waited the breaking up of the dam the danger would swiftly abate.    Instead of waiting he chose to plunge into the flood and risk the chances.    He knew the track before him, and that there were points where it sagged or was depressed, and that in such a basin the water would be necessarily deeper.    He, therefore, ventured an experiment.    He took the risk of just

what happened. The water deepened but he persisted. As the danger increased it was possible to retreat. He chose to push on and take the chances. When he reached the sag the water mastered his fires and left the train helpless. It is impossible to say that in all this there was no evidence of negligence. The question is not what our judgment would have been, but whether the facts admitted of an inference that the engine was disabled by negligence. We think they do tend to establish it, at least so far as to raise a question of fact for the jury. But a graver suggestion is that the act of alleged negligence occurred before the request, and that indirectly the negligent delay, claimed to be excused by the contract and not made a ground of recovery, became available to the plaintiff. We must not forget the manner in which the question arose. We had decided in this same case, in distinct terms, that "in the unforeseen contingency which had arisen, it was the duty of the defendant's servants, who had the entire control of the motive power, to comply, if practicable, with the reasonable request of the plaintiff's agent, to place the train in the position which was necessary to enable him to save the property under his care from destruction." That was the duty imposed. The reasonable request was made and it was refused. One ground on which the refusal was sought to be justified was that there was no other motive power present except the train engine and that was disabled by the water. The validity of that excuse was denied by the court if the engine was so disabled by negligently and recklessly running it into the flood. That was only saying that the defendant should not plead its own previous negligence as an excuse for the inability to perform a distinct and affirmative duty. It did not give the plaintiff any benefit from defendant's negligent delay, but merely prevented the latter from having the benefit of it as an excuse. Does one who knows he may have a duty to perform escape its obligation by willfully or negligently incapacitating himself beforehand from performing it? It was the train-master's duty, if likely to be delayed by the flood, to place these cars where the cattle could be fed and watered. He could have

done that before he ran into the water.   He knew if his experi-
ment failed he would be unable to move the cars with the
engine at his command.   He negligently took the risk.   The
evil happened.   He could not move the cars when the necessity
arose, and the fault was his own.   To sustain as an excuse his
inability to do a duty imposed by the emergency, which
inability grew out of his precedent negligence, is to allow him
to take advantage of his own wrong.   If, when the necessity
arose, the disability of his train engine had occurred without
his fault and no other was at hand, a different case would have
been presented.   Occurring by his fault, the duty of procuring
other motive power to take the place of that negligently
disabled became pressing; the demand for it more just and
equitable; the extent of inconvenience to warrant a refusal
much greater and more serious.   We think, therefore, the
court did not err in submitting this question to the jury, and
that the exception taken was not well founded.

Upon the question of damages two requests to charge were
made and refused which may be considered together, as involv-
ing substantially the same inquiry.   One was that if the jury
believed it was unsafe to unload the cattle at Palatine Bridge
the plaintiff could not recover on account of the conductor's
refusal; and the other was, that if the jury thought the cattle
would have been injured by taking them through the water,
that could be considered on the question of damages.   The
difficulty underlying both requests is that the possibility of
injury to the cattle from unloading them at Palatine Bridge
was matter of pure surmise and speculation.   There was no
evidence which made such an injury even probable.   Some
accident might have happened; the supposition of the defend-
ant's counsel that some of the cattle might have been drowned
may be admitted as a possibility; but the damages which the
plaintiff actually did sustain cannot be mitigated by speculating
upon what might have happened if a request refused had been
granted.   Its refusal rendered damage to the cattle certain.
That injury the plaintiff had the right to seek to avoid.   He
could take the risk of unloading.   The act would be his.   He

only would be responsible for the consequences. The defend-ant cannot refuse him this opportunity, and claim to be re-leased from the damages which actually did result, upon what is necessarily a mere guess or surmise that damages would have followed the unloading. No duty or obligation of the contract of the carrier would have been violated by permitting the plaintiff to unload. It would be his act, and not that of the defendant, and he could not be heard to complain of the granting of his own request, or of the consequences of his own act.

A further question was raised upon the facts which occurred at Utica. The plaintiff's agent there requested the conductor to place his cars in a convenient position for unloading, which request was refused. With reference to that transaction the court was asked to charge that the defendant was not liable for any alleged failure or refusal to leave the cars containing the plaintiff's cattle at Utica. The court declined to charge in that form, but left it to the jury to say whether it was reason-able to make the request at Utica, and that the defendant was bound to grant the request so far as to haul the cars where plaintiff could unload them, if there was good reason to be-lieve there was danger in going on. And in that connection the learned judge further charged, upon the request of defend-ant's counsel, that if the jury should believe that the conductor of the train, when at Utica, had reason to believe that he could run the train through to West Albany without serious deten-tion, then the company would not be liable by reason of a re-fusal to leave the cars containing plaintiff's cattle at Utica, or to permit the plaintiff to unload the cattle there. These two instructions of the charge were sufficiently favorable to the de-fendant, and were entirely correct. Taken together they left it to the jury to find negligence in the refusal at Utica only in the event that the conductor had not reason to believe that he could successfully run the train through the high water of which he had been warned. If he had no such reason then his refusal to allow the cattle to be unloaded at Utica, and to

insist upon running them into danger would certainly be negligence. The charge was not erroneous in this respect.

An objection is taken that as to three of the cars no request was made, and damages to the cattle conveyed in them ought not to have been recovered. No trace of this objection appears in the history of the trial. No such question was there raised. It appears here for the first time, and is in truth only a criticism upon the language of the witnesses. The case was tried and disposed of on the assumption that the request related to all the cars. A suggestion at the trial that it did not would have directed attention to the point and enabled the plaintiff to put it beyond question if he did not acknowledge its truth. The language of the witness did at first relate to the five cars, but afterward covered them generally. He had a dispatch from the owner to unload the cattle and told the conductor so. The latter was in no sense or respect misled as to what was requested, and we cannot now permit the question to be raised.

The final objection argued is that the whole injury was from delay, and that was released by the contract under which the cattle were shipped. But that is not the view taken by us on the previous appeal, or justified by our present examination of the case. There was no recovery for delay. That was not the cause of the injury. If the cattle had been fed and watered no cause of action would have existed. It is because they were not, through the sole fault of the defendant, that the injury occurred, and the damages were recovered.

The case was carefully tried, and great care was exercised to present the case to the jury in accordance with our views on the previous appeal. We do not think any error was committed which renders it our duty to grant a new trial.

The judgment should be affirmed with costs.

All concur, except FOLGER, Ch. J., and EARL, J., dissenting, and RAPALLO, J., absent at argument.

Judgment affirmed.