FRANK J. BISSING, Plaintiff, *v.* LEWIS L. SMITH and Others, Defendants.

*Ejectment — judicial notice of the rights of the Holland Land Company — recitals in a deed — presumption as to the execution of a power in trust — champerty — burden of proof of adverse possession — credibility of a party.*

The compact entered into between the States of New York and Massachusetts in 1786 whereby the sovereignty and jurisdiction over the disputed territory in the western part of the State of New York were ceded to the State of New York, and the right of preemption in the land to the State of Massachusetts, the conveyance by the State of Massachusetts of the western part of that territory, subject to the native right of the Indians, to Robert Morris, and his conveyance of a portion of it to the Holland Land Company, are matters of public history of which the courts will take judicial notice. It is not a good objection to a deed from the Holland Land Company of premises in that section of the State, offered upon the trial of an action in ejectment, that no title to the premises was shown in that company.

Recitals in a deed are evidence in an action of ejectment only against the parties thereto and their privies in estate and blood, but a person in possession of lands who conveys them to a grantor of the plaintiff and afterwards accepts a lease of the same premises from such grantor, places himself in such a relation to the plaintiff's title that he will be bound by the recitals in the chain of such grantor's title.

Where persons are by certain instruments constituted trustees, or at least donees of powers in trust, and are given a power of sale, their execution of the same will be presumed to have been effectually made notwithstanding the existence in the grants of certain conditions which seem to limit their powers.

The statute declaring void a grant of lands, if at the time of delivery of the grant the lands shall be in the actual possession of a person claiming under a title adverse to that of the grantor, establishes a rule of law which is not to be construed with any more liberality than its terms necessarily require.

The possession of a tenant is deemed to be in subordination to the title of his landlord until twenty years after the tenancy ceases, but where he has been evicted he may return at once and occupy in hostility to the landlord's title.

Where such an evicted tenant returns and occupies for a period of less than twenty years and conveys to another, the latter, if actually occupying, may be deemed to be in possession and claiming under a specific title adverse to that of the landlord.

Although such a grantee is not compelled to inquire into the nature of the title of his grantor and is not chargeable with constructive notice of its defects, yet the burden is upon him to show actual possession and his adverse holding under color of title; and upon these issues the question is ordinarily one of fact for the jury.

The weight to be given to the testimony of a party is always, by reason of his interest in the event, a question for the jury.

MOTION by the defendants, Lewis L. Smith and others, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance upon the verdict of a jury in favor of the plaintiff, rendered by direction of the court after a trial at the Erie Circuit on the 18th day of April, 1894.

*Edward D. Strebel, Edwin C. Robbins* and *George Clinton,* for the plaintiff.

*John A. Ronayne* and *Stephen Lockwood,* for the defendants.

BRADLEY, J.:

The action is ejectment to recover the possession of a parcel of land within what is known as the Buffalo Creek Reservation in the county of Erie. The main question is whether the evidence was sufficient to establish title in the plaintiff to the premises.

It appears that on the 12th day of September, 1810, Wilhem Willink and others, constituting the Holland Land Company, by their attorney, Paul Busti, conveyed to David A. Ogden about 200,000 acres of land lying west of the Genesee river and within what was known as the Cattaraugus Reservation, Tuscarora or Seneca Reservation, Buffalo Creek Reservation, Allegheny Reservation, Caneadea Reservation and the Tonawanda Reservation.

The beneficiaries of that purchase and conveyance were Ogden and his associates, and the trusts upon which the title was taken and held were declared in the subsequent deed of date February 8, 1821, covering the same property, made between David A. Ogden and wife of the first part, Paul Busti of the second part, Joshua Waddington and others of the third part and Robert Troup, Thomas Ludlow Ogden and Benjamin Woolsey Rogers of the fourth part, by which conveyance was made to the parties of the fourth part upon the trusts that they and the survivors or survivor of them should have the premises surveyed into lots for the purpose of division into twenty shares and make partition between the associates in the manner mentioned, so far as in their judgment the lands were susceptible of such division, and that they sell at public auction and convey such of the lands as they might deem not susceptible of such division; and they were given full power and direction to treat with the

Seneca Nation of Indians for the purchase or extinguishment of the native claim to all or any part of the lands.

The parties of the third part were the beneficiaries and associates, and constituted what was known as the Ogden Land Company.

The next deed was that of date December 19, 1829, made between Robert Troup, Thomas Ludlow Ogden and Benjamin W. Rogers of the first part, Joseph Fellows and Charles G. Troup of the second part and Thomas Ludlow Ogden, Joseph Fellows and Charles G. Troup of the third part. In it is recited the prior deed of February 8, 1821, and its purpose, the progress made in treating with the Indians, and that certain portions of the premises had been partitioned and allotted to the associates, etc. Then it proceeds to describe the lands still held by the parties of the fourth part in the deed of February 8, 1821, and adds that Robert Troup and Benjamin Woolsey Rogers having, at a meeting of the associates, signified their desire to be released from the further execution of the trusts, "it was resolved by the associates so convened that all the residue and remainder of the said trust estates should be vested for the like purpose and upon the like trusts in the said" parties of the third part in pursuance of such resolution. And conveyance was accordingly made to Joseph Fellows and Charles G. Troup upon such trusts to be held by them and the survivors or survivor of them.

In a deed made July 16, 1840, between Benjamin W. Rogers and others of the first part and Thomas Ludlow Ogden and Joseph Fellows of the second part, is recited the deed of December 19, 1829, the death of Charles G. Troup, the progress which had been made in the execution of the trusts and the shares of the parties of the first part (which constituted twelve-twentieths of the entire interests). The deed then proceeds to grant the estate to the parties of the second part, repeats the trusts and grants to them power in the events and for the purposes mentioned to sell lands by public auction or private contracts. And in the deed of date September 21, 1871, made between Joseph Fellows of the first part, and George R. Babcock and Charles Edgar Appleby of the second part, after reciting the deed of December 19, 1829, and the death since then of Thomas Ludlow Ogden and Charles Troup, it was further recited that Joseph Fellows having signified his desire to be

relieved from the further execution of the trust, at a meeting of the associates or proprietors of the trust property convened in the city of New York, it was resolved by them that the residue and remainder of the trust estate be vested in George R. Babcock and Charles E. Appleby as trustees, to hold for the like purposes and upon the like trusts as the same had hitherto been held by Fellows, and grant was made to them accordingly. Babcock died in September, 1876, and afterwards, November 1, 1892, Charles E. Appleby, describing himself therein as the sole surviving trustee of the estate and interests commonly called the Ogden Land Company, executed and delivered to the plaintiff a deed purporting to convey the land in question to him.

The compact entered into between the States of New York and Massachusetts, in 1786, whereby the sovereignty and jurisdiction over the disputed territory in the western part of this State were ceded and surrendered to the State of New York and the right of preemption in the land to the State of Massachusets, the conveyance by the State of Massachusetts of the western part of that territory, subject to the native right of the Indians, to Robert Morris, and his conveyance of a considerable portion of it to the Holland Land Company, are matters of public history in this State.

The objection to the introduction in evidence of the first deed above mentioned on the sole ground that no title was shown in the Holland Land Company is deemed not well taken. As the defendants did not on the trial raise the question of power of Paul Busti as attorney for that company to execute the deed, it is not available on this review. The fact, it may be, would have been supplied if the objection had been taken. The power of Appleby as trustee for the Ogden Land Company to make the conveyance to the plaintiff is questioned, and exception was taken to the introduction of the deed in evidence.

The purpose of the deed of February 8, 1821, was to declare the trusts upon which title had been taken by Ogden from the Holland Land Company and to convey the land to the persons named as trustees for the execution of the trusts. The purpose of the deed of December 19, 1829, was to substitute Fellows and Charles G. Troup in place of those who then retired and by grant place them in such relation to the lands remaining subject to it so as to enable

them to execute the trust. This, as appears by recitals in the deed, was pursuant to the consent and resolution to that effect of the beneficiaries of the trust. And the retirement of Fellows as the sole surviving trustee and the substitution of Babcock and Appleby as trustees was accomplished by the deed of September 21, 1871, pursuant to the like consent and resolution of the beneficial proprietors, as is also recited in the deed.

Those recitals are evidence only against the parties to the deeds and their privies in estate and blood. (*Hardenburgh* v. *Lakin*, 47 N. Y. 109.) When those deeds were put in evidence it ·did not appear on what the defendants' alleged claim of title was founded, and it could not then be assumed that their claim of title was paramount to that conveyed by the Holland Land Company to Ogden. It afterwards appeared that the defendant Lewis L. Smith was in possession of the land for some time prior to March 24, 1875 ; that an action had been commenced against him by Babcock and Appleby to recover the possession of it, and on that day the action was, pursuant to arrangement between the parties to it, discontinued ; that Smith, upon a consideration expressed of $250, executed and delivered to George R. Babcock, as trustee, a deed of conveyance of the said premises to him, which deed was recorded the same day, and they joined in the execution of a lease made by Babcock as such trustee to Lewis L. Smith for the term of one year. Holding over after the expiration of the year Smith, by summary proceedings under the statute instituted by Babcock in April, 1876, was removed from the possession of the premises.

The surrender and conveyance of them to Babcock as trustee and taking from him as such trustee the lease, placed Smith in such relation to the title conveyed to Ogden and to the trusts in behalf of the proprietors as to render the recitals in the deeds evidence against him.

Babcock and Appleby were apparently clothed with power to execute the trusts, and assumed to do so. The land in question was part of that conveyed to Ogden. The conveyance by Smith to Babcock as trustee inured to the trust. On the death of Babcock the powers of the trust or powers in trust devolved upon Appleby as the survivor. And as amongst the powers of the trustees was that of sale it will be presumed that the sale and conveyance were

effectually made to the plaintiff notwithstanding the conditions in that respect in the grant of the power. (*Minuse* v. *Cox*, 5 Johns. Ch. 441; *Marshall* v. *Stephens*, 8 Humph. 159; 47 Am. Dec. 601; *Schenck* v. *Ellingwood*, 3 Edw. Ch. 175.)

It appears that the next year after he was removed from the premises, and in 1877, Lewis L. Smith again went into possession of them. So far as appears he did so without any right or permission. In 1891 he executed and delivered to his son, the defendant Louis John Smith, a quit-claim deed of the premises. This grantee alleges that he then entered under a claim of title founded upon such conveyance and exclusive of any other right. And it is urged in his behalf that the deed of conveyance made by Appleby as trustee to the plaintiff in 1892 was champertous and void by force of the statute which provides that " every grant of lands shall be absolutely void if at the time of the delivery thereof such lands shall be in the actual possession of a person claiming under a title adverse to that of the grantor." (1 R. S. 739, § 147.) This question could not arise if the defendant Lewis L. Smith had continued in possession from the end of the term of the demise to him, as then no grant could within twenty years of such continued possession have been made by or taken from him other than in subordination to the title of his landlord. ( *Whiting* v. *Edmunds*, 94 N. Y. 309; *Bedlow* v. *N. Y. Floating Dry Dock Co.*, 112 id. 265; *Church* v. *Schoonmaker*, 115 id. 570.)

But on his eviction from the possession and surrender of it to his landlord his relation of tenant was terminated and he was enabled on returning to the possession to assume to occupy in hostility to the owner. His possession, however, will be deemed to have been in subordination to the legal title unless held adversely to it for twenty years. (Code Civ. Proc. § 368.) Yet a person taking a deed of conveyance from him and entering under it might be deemed in possession claiming under a specific title adverse to that of the grantor of any conveyance made to another while such actual possession continued. (*Crary* v. *Goodman*, 22 N. Y. 170; *Sands* v. *Hughes*, 53 id. 287; *American B. N. Co.* v. *N. Y. E. R. R. Co.*, 129 id. 252.)

The burden was with the defendant Louis J. Smith to prove that he entered into and was in the actual possession of the prem-

ises under such deed to him and holding adversely to the title of the plaintiff's grantor at the time the deed was made to the plaintiff. He has the benefit of no inference in support of such facts. (*Howard* v. *Howard*, 17 Barb. 663.) As a general rule when entry is made under color of title the possession will be deemed adverse although the supposed title is groundless. (*La Frombois* v. *Jackson*, 8 Cow. 589.) And the grantee so entering under color of title is not required to inquire into the nature of the title of his grantor, nor is he chargeable with constructive notice of its defects. (*Sands* v. *Hughes*, 53 N. Y. 287.)

It is not the policy of the law in this country to give this rule of the common law embraced in the champerty statute a construction and effect more liberal than its terms necessarily require. It has been held that to constitute possession adverse so as to render a deed subsequently made void, the party asserting it must rely upon his title and believe it to be good, although it may be otherwise. (*Livingston* v. *Peru Iron Co.*, 9 Wend. 511.)

This doctrine, however, has been questioned in later cases, and it may be that the question of good faith in that respect on his part is not one for consideration. (*Sands* v. *Hughes*, 53 N. Y. 596, 597; *Munro* v. *Merchant*, 26 Barb. 402.) But whether or not he is in the actual possession, holding adversely under a claim of a specific title at the time the subsequent deed is made, is usually a question of fact for the jury. In *La Frombois* v. *Jackson* (8 Cow. 597) Chancellor JONES said : " The fact of possession and its character, or the *quo animo* of the possessor, are the test," and added that in that case the continued possession was conclusively shown, and the *quo animo* was apparent from the uniform claim of title and continued acts of ownership. (See, also, *Livingston* v. *Peru Iron Co.*, 9 Wend. 518; *Pownal* v. *Taylor*, 10 Leigh, 172; 34 Am. Dec. 725; *Macklot* v. *Dubreuil*, 9 Mo. 477; 43 Am. Dec. 550; *Beverly* v. *Burke*, 9 Ga. 440; 54 Am. Dec. 351.) In the present case the defendant Louis J. Smith testified that he took possession of the premises about the time the deed was made to him ; that he has ever since held possession of them under the quit-claim deed from his father, and has used the premises for farming and gardening purposes ; that he built a barn and house there, and that he has never recognized any outstanding title in any one to the premises.

He also testified that his place of residence was in the city of Buffalo, and that he cultivated part of the land himself, and a portion of it was worked by his tenant, and it appears that during that time his father continued to reside on the premises.

The difficulty in treating the facts testified to by the defendant as established as matter of law is in his relation of party to the action, and his interest as such in the controversy. The credibility of his testimony was a question for the jury. (*Honegger* v. *Wettstein*, 94 N. Y. 252; *Miller* v. *Boyer*, 79 Hun, 131.)

And since the defendants did not request the submission of any question to the jury, but, by their motion for nonsuit, treated the case as presenting questions of law only, and as the court directed a verdict for the plaintiff at his request, the questions of fact must be deemed to have been disposed of by the court adversely to the defendants. (*Winchell* v. *Hicks*, 18 N. Y. 558; *Ormes* v. *Dauchy*, 82 id. 443; *Dillon* v. *Cockcroft*, 90 id. 649.)

So far as relates to the defendant Lewis L. Smith, it may be added that he had no defense under the statute; he had, sixteen years before the execution of the deed to the other defendant, conveyed to Babcock as trustee whatever claim of title he may then have had, and his possession taken in 1877, continued for a period less than twenty years, could give him no defense against the rightful owner, nor could he, by his deed to the defendant Louis J. Smith, create, through the adverse possession of the latter, a claim of a specific title under which to shield his own possession against a conveyance thereafter made by the owner to another.

The motion for a new trial should be denied.

DWIGHT, P. J., and LEWIS, J., concurred.

Motion for new trial denied and judgment directed for the plaintiff upon the verdict.