### KENNEDY v. McALLASTER et al.

(Supreme Court, Appellate Division, Fourth Department. June 18, 1898.)

1. ELEVATOR ACCIDENT—NEGLIGENCE—PRIMA FACIE EVIDENCE.
    In an action for negligence in the care of an elevator, evidence that it fell from the use for which it was intended would be evidence that it was defective and unsafe, which unexplained would warrant the jury in finding defendant negligent regarding it.

2. SAME—QUESTION FOR JURY.
　　In an action for negligence in the care of an elevator, where the presumption of negligence arose from proof of the accident, the credibility and sufficiency of defendant's testimony to overcome it was for the jury.
　　Adams, J., dissenting.

Appeal from special term, Monroe county.

Action by Patrick Kennedy against George McAllaster and others. At close of defendants' testimony, the complaint was dismissed, and plaintiff appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

John F. Kinney, for appellant.
C. D. Kiehel, for respondents.

GREEN, J. This action was brought to recover damages for personal injuries sustained by the plaintiff as a consequence of negligence imputed to the defendants. The defendants were engaged as co-partners in the jewelry business, and occupied a store as lessees of the owner of the premises. In the extension under the sidewalk was an elevator, which was used for the purpose of bringing in freight and taking up empty barrels and boxes and ashes from the cellar. Plaintiff was employed by the city to collect and carry away rubbish, and on the 7th day of March, 1895, he went to the defendants' store for that purpose. Defendants' employé placed four barrels containing ashes and rubbish upon the elevator, and hoisted them to the sidewalk, whereupon the plaintiff carried them away, and emptied their contents into a cart. While he was engaged in replacing the empty barrels on the elevator platform, he placed one foot upon it; the elevator instantly gave way, and he was precipitated headfirst to the bottom of the cellar, and he thereby sustained serious damage to his person. Any attempt to describe the character of these injuries without quoting the clear and vivid description given by the plaintiff himself would be a vain and unprofitable task. Suffice it to say, then (to borrow his own words), he was "disfigured in my insides," and "bruised all up through my insides." The extent and character, however, of the injuries received, is a matter of no importance in determining the question involved in this appeal.

The plaintiff's theory as to the cause of the accident is that some of the boards composing the elevator platform were in a decayed condition, and, when he stepped upon them, they gave way, thus causing the fall of the elevator. A witness for the plaintiff testified that he (the witness) jumped down into the cellar immediately after the accident, and discovered that the bottom of the platform was rotten; that the beam and some of the boards were broken, but he could not tell from the piling up of the boards and beams in the elevator well after the accident what parts of them could have been seen before the accident. It was conceded that the surface of the platform appeared to be sound and in good condition. Defendants and their witnesses gave evidence to the effect that there were no marks or appearances of decay or rottenness in the underside of the platform, and that the broken beam and boards were apparently sound. No

evidence was given tending to show that the planks in the platform appeared or might have been discovered to be in a decayed condition prior to the accident; and the defendants contend that no question of negligence on this point could have been submitted to the jury, because the only conclusion from the evidence that the jury could properly arrive at was, if any rottenness or decay existed in the planks after the accident, it must have been in such parts as were not apparent before the accident occurred. A witness for the defendants testified that the accident was caused by the breaking of the cable on the south side of the elevator, which caused the north bracket of the platform to drop to the bottom of the elevator well, and that the planks and the beam broke in the fall. If that were the true cause of the accident, then the decayed condition of the planks did not contribute to it, and that circumstance is not a material one.

Defendants contend that there was no evidence of negligence on their part in failing to discover the defect in the cable, whatever it may have been that occasioned it to break, and that the court properly dismissed the complaint. There undoubtedly must be, in such cases, evidence of the alleged negligence of the defendants; but that evidence may, in such a case as this, be sufficiently shown by the presumption which arises from other facts proved in the case. Lyons v. Rosenthal, 11 Hun, 46. In maintaining and using an elevator of this character, even though for a temporary purpose, the defendants are responsible for any negligent condition of its appliances which they permitted to exist by their passive acquiescence, whether such acquiescence followed actual knowledge or resulted from failure to acquire knowledge. If (as it appears) the cable was defective and unsafe, the question whether it was in that condition through the negligence of the defendants would be for the jury; and the fact that it broke, and the elevator fell, from the use for which it was intended, would be evidence that it was defective and unsafe, and, if not satisfactorily explained or controlled, would be sufficient evidence to authorize the jury to find that the defendants were negligent in regard to it.

In Green v. Banta, 48 N. Y. Super. Ct. 156, the plaintiff and other servants of the defendant were engaged in dumping bricks upon a scaffold when it fell, and plaintiff was injured thereby. The court charged the jury that the fact that the scaffold gave way was some evidence—it is what might be called "prima facie evidence"—of negligence on the part of the person who was bound to provide a safe and proper scaffold. This instruction was held correct, upon the principle laid down in Mullen v. St. John, 57 N. Y. 571, viz.:

"Where the thing is shown to be under the management of the defendant or his servant, and the accident is such as, in the ordinary course of things, does not happen if those who had the management used proper care, it affords reasonable evidence, in absence of explanation by defendant, that the accident arose from want of care."

The case of Green v. Banta, supra, was affirmed, upon the opinion of the court below, in 97 N. Y. 627, and was followed in a similar case, —Solarz v. Railway Co., 8 Misc. Rep. 656, 29 N. Y. Supp. 1123, affirmed in 11 Misc. Rep. 715, 32 N. Y. Supp. 1149, upon the opinion of

the trial court, and affirmed in the court of appeals, without opinion, 155 N. Y. 645, 49 N. E. 1104. And see Gerlach v. Edelmeyer, 47 N. Y. Super. Ct. 292, affirmed, without opinion, in 88 N. Y. 645.

The principle stated is of particular pertinency to a case of this kind, where the proprietor or occupier of premises abutting upon a public street avails himself of the privilege of placing something in the sidewalk which will serve as a convenience or easement to his premises, and thereby assuming a duty to the public to keep it in a safe condition. Matthews v. De Groff, 13 App. Div. 356, 43 N. Y. Supp. 237.

But it is contended that the defendants have not only given a satisfactory explanation as to the true cause of the accident, but have also rebutted and overthrown the presumption or inference of negligence arising from the nature of its occurrence, by evidence that they exercised due care and precautions to discover any defect or imperfection in the cables. In other words, the contention amounts to this: That the testimony of a party defendant that he had made proper examinations or inspections of the cables for the purpose of ascertaining their condition must be taken as true. The question for consideration is whether, in such a case as this, the testimony of the party defendants, where it is the only evidence on an essential point, ought to be submitted to the jury, and not made the basis of a binding direction by the court. The court might have directed the jury to find a verdict for the defendants in the event that the jury should believe their testimony to be true, but had it the right to direct the jury to believe them? At the time of the accident (March 7, 1895), the defendants had been in possession of the premises nearly four years. One of the defendants, John Humburch, testified that in January, 1894, the cable on the south side broke, and they put in a new cable there, and that this was the cable that broke and caused the elevator to fall; that he had occasion to go into the basement probably once or twice a day, though not every day, and "would look the elevator all over." After the new cable was put in, "I casually looked over the woodwork and ironwork, and occasionally ran the elevator up and tried it. I noticed this cable while it was being used by us, and it always looked safe and sound. No part showed any defect. A week before the accident, I examined the elevator. I looked it over very carefully, and ran it up and down. There was no weight on it. I looked at the cable to see if it was rusty, and looked at the wood to see if anything was decayed. Every time I went downstairs I naturally looked at it. I only used to test it once in a while. We might use the elevator three times a week, and then we might not use it once a week." After the breaking of the cable, in 1894, John Humburch told Steele, an employé, to look after the elevator, and he had entire charge of it. Steele testified that he would look at the elevator from time to time when it was up, to see that there was no danger of it falling on him. "The cable on the morning before the accident was apparently all right and sound, and no break in it, and none of the strands broken, that I could see, and did not show a defect of any kind. I think I lifted up four or five barrels that morning." Defendant Albert Humburch says that he always looked at

the elevator when he went downstairs. "We used to keep the elevator up a great deal, and I oftentimes noticed it. The elevator was sometimes kept up towards the sidewalk, and the iron doors were sometimes opened to ventilate the cellar. We didn't make any repairs on the elevator." A witness testified that there was no appliance attached to the elevator to hold the platform from dropping out in the event of the breaking of the cable on either side.

Now, the rule is general, if not universal, that where the witness is interested in the matter in controversy, and although his testimony is uncontradicted, his credibility is a question for the jury; and the court is not warranted in directing a verdict upon his testimony alone when the testimony may be improbable in itself, or inconsistent with other things or circumstances of the case. Gildersleeve v. Landon, 73 N. Y. 609; Miller v. Steamship Co., 118 N. Y. 199, 208, 23 N. E. 462; Munoz v. Wilson, 111 N. Y. 300, 18 N. E. 855; Wohlfahrt v. Beckert, 92 N. Y. 497, 498; Honegger v. Wettstein, 94 N. Y. 252; Sipple v. State, 99 N. Y. 289, 1 N. E. 892, and 3 N. E. 657; Volkmar v. Railway Co., 134 N. Y. 422, 31 N. E. 870; Day v. Jameson (N. Y. App.) 25 N. E. 238; Dean v. Van Nostrand (N. Y. App.) 4 N. E. 134; Bank of Attica v. Pottier & Stymus Mfg. Co. (Sup.) 1 N. Y. Supp. 483; Goldsmith v. Coverly, 75 Hun, 48, 27 N. Y. Supp. 116; Bills v. Railroad Co., 84 N. Y. 5. Facts testified to by a party, though uncontradicted, cannot be deemed established, as matter of law, if his testimony alone supports them, where there are other things or circumstances in the case which might render his testimony inconsistent or improbable, but must be submitted to the jury in order that it may determine what effect, if any, such other things and other circumstances and his interest in the result of the controversy should have upon his credibility, and upon the final disposition and result of the action. Bissing v. Smith, 85 Hun, 564, 33 N. Y. Supp. 123; Kearney v. Mayor, etc., 92 N. Y. 621. To say that the jury must take the testimony of an interested party as true without qualification, because some other witness does not contradict it by direct testimony, is not only to trench upon the province of the jury, but to dissipate all distinctions between the testimony of disinterested witnesses and those whose interest in a recovery extends to the whole subject-matter of the action. Sheridan v. Mayor, etc., 8 Hun, 429.

The circumstances of this case warrant the application of the general rule. The credibility of a party or interested witness is ordinarily a question of fact, and therefore it was a question for the jury to determine whether, in view of all the circumstances and the reasonable inferences warranted thereby, the statement of John Humburch that it was the new cable, and not the old one, that broke and caused the accident, should be accepted as the truth. The old cable had been in use by the defendants for the period of about four years, and, for aught that appears from the record, may have been used for some time theretofore. It was liable to become defective from long usage and rust, as it happened with the other cable. If one of the cables broke in January, 1894, it was a reasonable expectation that the other would break some time thereafter. It is a reasonable probability that a new cable will last longer than one long in use,

unless it be presumed that the former was not as strong and sound as the other. It is the peculiar province of the jury to weigh the credibility of the statements of a party witness with the probabilities of the case, and their consistency with the circumstances. The jury is not bound to refrain from exercising its judgment, or to blindly adopt statements of such a witness. From certain facts presumptions may arise. These presumptions are merely evidence, like other proof in the case, and, with the explanation given by the defendants, should carry the whole controversy to the jury. There was evidence presumptive in character against the defendants, and the question whether the positive evidence given in their behalf overcame the presumption or prima facie evidence against them should be determined by the triors of fact. The jury is at liberty to base its conclusions upon the presence of facts and circumstances disclosed by the evidence, which create presumptions in conflict with or contradictory of positive evidence given; and thus two elements, not one alone, are taken into consideration. These facts and circumstances may warrant an inference of inherent probability or falsity in the statements of the witnesses. In such a case the court should not dismiss the complaint, or direct a verdict upon the testimony of interested witnesses, nor instruct the jury that such testimony is binding upon it. The court cannot hold, as matter of law, that there is not "any thing or circumstance from which an inference against the fact testified to by him could be drawn," as was said in Kelly v. Burroughs, 102 N. Y. 93, 6 N. E. 109.

Then, again, it was proper for the jury to determine whether the defendants adequately performed their duty to the public by making sufficient examinations and tests of the elevator and its appurtenances. The defendants were bound to exercise the same degree of care and attention for the protection and safety of the plaintiff as they would owe to a person who, while passing along the sidewalk, and without any inadvertence or negligence on his part, should step upon the platform. This elevator was in the sidewalk of a public street in the business portion of a city,—and presumably in a much frequented portion of it,—and was used for defendants' private convenience. It was their duty, therefore, to exercise reasonable care and diligence in keeping it safe and secure. They were bound to know that persons would pass and repass thereby, and that some one might, without apprehending any danger, step upon it. It is quite certain that the elevator was not secure, or it would not have fallen, and the jury would be justified in finding that its insecure condition was owing to defendants' want of due care and diligence concerning it. The jury would consider whether the defendants had exercised the necessary care and used the necessary precautions in keeping it in a safe condition, so as to protect persons who had a right to pass along there. The defendants were bound to know that, if the cables became worn and defective by time and use, somebody might fall through, and be injured, and they were therefore to exercise all reasonable skill, care, and prudence with reference to the possible injury that might occur to persons passing along the street. Of course, they were not insurers, but they were bound to exercise such a de-

gree of mechanical skill in keeping the elevator in safe condition as would be ordinarily proper and necessary to protect travelers, in view of what might occur. This duty includes the necessity of an examination or inspection by a competent person, and also involves the requirement that it shall be careful and sufficient. If the defendants did everything that was prudent and cautious, in view of the use to which the elevator was put, that was all they were required to do, and they should not be held responsible for an accident of this kind. Whether they did so, in so far as ordinary skill, prudence, and foresight could anticipate any possible or probable danger arising from it, is a matter for the jury. It must be established reasonably to the satisfaction of the jury that they did use such precautions as would be necessary and sufficient under the circumstances. They must not only show that they made inspections to the best of their judgment and satisfactory to themselves, but it must also appear that they did it in such a way as was reasonable and proper in the judgment of the jury, under all the circumstances of the case. Defendants cannot avoid their liability in a case of this kind, where they owe a duty to the public, simply by showing that they have exercised the best judgment they possessed, or have acted in a manner satisfactory to themselves. To render them liable, it was enough that they ought to have known or anticipated such an occurrence, and provided against it,—that is, if they would have known if they had exercised due care; and they are responsible for such care as ought to have been exercised under the circumstances of the case. The jury would be at liberty to consider that the elevator was placed in a public walk; how much the highway was traveled; in what part of the sidewalk it was, whether in that over which pedestrians were likely to travel or not; and also to consider what was likely to be the consequences arising from having it out of order, because the consequences of an accident may properly be taken into consideration in determining what care should be taken to avoid it.

It was a proper case for the jury to consider whether, under all the circumstances, the elevator was in a dangerous condition by reason of such a lack of care as properly ought to have been exercised with reference to it. The presumption of negligence was raised by the facts and circumstances of the case, and it was incumbent upon the defendants to meet and remove this by evidence reasonably satisfactory to the jury. They were called upon to free themselves from the imputation of negligent omission in allowing the cable to become defective from long use, as it must have been, as shown by its condition when it gave way. The testimony respecting the examinations made is not so clear and convincing as to warrant the court in determining their sufficiency as matter of law. In such a case as this, the mere fact that the defective condition of the cable was not observed or apparent would not be conclusive upon the jury. No doubt, the jury would give due weight to the testimony of the defendants and their servants of the commendable solicitude which they say they exercised for this elevator. From the necessity of the case, such evidence as there is to that effect proceeds wholly from parties having an important interest in the controversy. Evidently, it would be most diffi-

cult, if not impossible, for the plaintiff to contradict their statements that they had made frequent inspections of the elevator and its appliances.    Is it not, therefore, a very proper case for the consideration of the jury?    The cases arising often present such a variety of circumstances that it is eminently proper that the degree of care and circumspection demanded of persons in various situations should be determined by the triors of fact.    If there is ground for opposite inferences, and the conclusion either way would not shock the sense of a reasonable man, then the case is for the jury, although the judge may entertain a clear and decided conviction that the truth is on this or that side of the controversy.    Bagley v. Bowe, 105 N. Y. 179, 11 N. E. 386.    It is not enough to justify a nonsuit that the court might, in the exercise of its discretion, grant a new trial.    It is only where there is no evidence in law sufficient to sustain a verdict that the court is called upon to nonsuit.    Colt v. Railroad Co., 49 N. Y. 671; Bills v. Railroad Co., 84 N. Y. 5; Luhrs v. Railroad Co., 11 App. Div. 173, 42 N. Y. Supp. 606.

The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event of the action. All concur, except ADAMS, J., dissenting.

ADAMS, J. (dissenting).    The evidence upon the part of the plaintiff, in my opinion, falls far short of furnishing a reasonable or satisfactory explanation of the cause of the accident to which he attributes his injuries.    The most that can be gleaned from it is that the elevator fell; that, in falling, some portion of the platform was broken; and that after the accident it was discovered that the woodwork was somewhat decayed.    And we are asked to infer from this circumstance that the elevator fell because of the rotten condition of the wood of which it was constructed.    It is perfectly obvious, however, to my mind, even upon the plaintiff's evidence, that this was not the case; and, when we come to examine the record further, it is equally obvious that the accident was attributable to the breaking of one of the wire cables which supported the elevator, and by means of which it was raised and lowered.    Edward B. Steele, a witness for the defendants, whose duty it was to look after the elevator, testified that he examined it shortly after the accident occurred, and found that the cable on the south side had snapped in two, leaving a piece about six inches in length attached to the bracket; that the north side was intact; and that the effect of this breakage was to drop the south end of the elevator platform, which is the precise condition in which it was found, according to the undisputed evidence.    John H. Humburch, one of the defendants, testified that he examined the cable immediately after the accident, and discovered that it was broken about six inches from the top on the south side.    Albert Humburch, another of the defendants, testified to the same effect, as did John Jack, a young man in the employ of the defendants; and nobody pretends to contradict this evidence.    It also appears that the cable which broke was a new one, which had been attached to the elevator by the owner of the premises only about a year prior to the accident. It had been inspected from time to time by the defendants, and no

defect had ever manifested itself. Indeed, after the cable parted, there was nothing to indicate that the defect in it would have been discovered upon the closest inspection. It follows, therefore, that, if the accident was caused by the parting of this cable, the defendants could not, in these circumstances, be held responsible therefor.

It is said, however, that the evidence in regard to this feature of the case is all furnished by the defendants or their witnesses, and that, consequently, it was incumbent upon the trial court to submit the case to the jury, in order that they might determine what degree of credibility should be attached to this character of evidence. I cannot assent to this view of the case, for the reason, as already stated, that the defendants furnished the only rational or satisfactory explanation of the cause of the accident; and to permit a jury to say upon the exceedingly flimsy evidence furnished by the plaintiff that the accident was attributable to any other cause would be equivalent to saying that they might render a verdict based upon nothing more substantial than conjecture and speculation.

I am therefore of the opinion that the learned trial court was justified in dismissing the plaintiff's complaint, and for this reason am constrained to dissent from the prevailing opinion.